**UNITED STATES of America, Appellee,**

v.

**Michael C. STOCKWELL, Defendant-Appellant.**

**No. 1202, Docket 83–1376.**

United States Court of Appeals, Second Circuit.

Argued May 8, 1984.

Decided Aug. 24, 1984.

---

Rosemary G. Roberts, U.S. Atty., W.D. N.Y., Rochester, N.Y., for appellee.

David Rothenberg, Geiger & Rothenberg, Rochester, N.Y., for defendant-appellant.

Before FEINBERG, Chief Judge, WINTER, Circuit Judge, and LASKER, District Judge.*

LASKER, District Judge.

Michael Stockwell appeals from his conviction in the Western District of New York (Michael A. Telesca, *Judge*) on a five-count indictment charging him with bank robbery, bank larceny and armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (b) and (d) (1982), respectively, possession of a firearm in violation of 26 U.S.C. § 5861(c) (1982), and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1982).

On October 29, 1982, Stockwell, acting alone, robbed the East Rochester branch of the Marine Midland Bank, armed with a sawed-off shotgun. Stockwell admitted the robbery at trial and disputed only the issue of intent, relying on a defense of insanity. Stockwell called Dr. Christopher Bauer, a licensed clinical psychologist, who testified that as a result of a narcissistic personality disorder with features of an anti-social personality disorder, together with a history of alcohol abuse and alcohol dependence, Stockwell lacked substantial capacity to conform his conduct to the requirements of the law on the day of the bank robbery. Stockwell also testified in his own behalf, recounting a life-long history of alcohol abuse and of problems in his personal relationships and relationships with employers.

Prior to trial, Stockwell was examined for the government by Dr. Richard Ciccone, Associate Professor of Psychiatry at

---

* Hon. Morris E. Lasker, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

the University of Rochester Medical School. Stockwell's counsel objected to the prosecutor's plans to be present at the interviews, and the prosecutor did not personally attend. Later, however, she listened to a complete tape recording of the interviews. Dr. Ciccone essentially confirmed Dr. Bauer's diagnosis, but testified that Stockwell had no psychotic symptoms whatsoever and that on the day of the robbery Stockwell did have substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law.

The jury returned a verdict of guilty on all five counts of the indictment. The District Court vacated the bank larceny and bank robbery counts [1] and sentenced Stockwell to a ten-year term of imprisonment on each count. This appeal followed.

## I.

Stockwell argues that the government violated Rule 12.2(c) of the Federal Rules of Criminal Procedure and his Fifth Amendment right against self-incrimination by making impermissible use at trial of his statements to Dr. Ciccone. Rule 12.2(c) authorizes the court to order a defendant who intends to raise an insanity defense to submit to a psychiatric examination at the government's request. The Rule further provides (in the version in effect at the time of the trial) that "[n]o statement made by the accused in the course of any examination provided for by this rule, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding." [2]

Stockwell contends that the prosecutor's cross-examination violated Rule 12.2(c) by employing information obtained in the psychiatric examination to carry out a general attack on his character and credibility rather than simply to rebut his insanity defense. He points out that, after his first interview with Dr. Ciccone, the government obtained a large number of documents relating to matters discussed at the interview, including Stockwell's school records, social service records, medical records, military service records, and employment records.[3] Stockwell argues that the government's use of these records, and other information obtained by Dr. Ciccone from Stockwell, was unrelated to the issue of sanity or insanity, and was directed instead to establishing that he was a life-long liar who was unworthy of belief. The government answers that the cross-examination about which defendant complains dealt only with factual matters which were brought out on direct in support of Stockwell's claim of insanity, and that, accordingly, the government's cross-examination constituted a permissible attempt to meet the defendant's proof on that issue.

Rule 12.2(c) protects the defendant's Fifth Amendment right against self-incrimination to the extent compatible with the government's right to respond to an insanity defense, by limiting the use of statements obtained in the examination solely to the issue of insanity. *See United States v. Halbert,* 712 F.2d 388, 389–90 (9th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *United States v. Madrid,* 673 F.2d 1114, 1119–21 (10th Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88 (1982); *United States v. Leonard,* 609 F.2d 1163, 1165–66 (5th Cir. 1980).[4] Although this rule is simply stated,

---

**1.** Bank robbery and bank larceny are lesser included offenses of armed bank robbery.

**2.** Rule 12.2(c) was amended in April 1983 in part, as follows:

No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony.

**3.** The documents were obtained through court order.

**4.** *See also Estelle v. Smith,* 451 U.S. 454, 463 & n. 6, 101 S.Ct. 1866, 1873 & n. 6, 68 L.Ed.2d 359 (1981); *Porter v. Estelle,* 709 F.2d 944, 950–51

applying it in the circumstances of this case is not an entirely straight-forward proposition, because of the difficulty of drawing a bright line between rebuttal of an insanity defense, on the one hand, and a general attack on credibility on the other.

Our view of the cross-examination, however, satisfies us that the prosecutor remained within the bounds of a legitimate attempt to challenge the insanity defense presented by Stockwell and did not misuse the material derived from Dr. Ciccone's interview of Stockwell. The defendant objects, for example, to the prosecutor's cross-examination regarding bad checks he once wrote. On his direct examination, however, Stockwell testified that the bad checks he wrote were related to the drinking problem which constituted an important aspect of his insanity theory: he testified that he had written bad checks because of the large amount of money he was spending on liquor. On cross-examination, the prosecutor attempted to cast doubt upon this contention by bringing out the fact that the checks were written for purchases other than liquor. The fact that the government may have obtained information about the bad checks as a result of the defendant's statements during the psychiatric examination has no invidious implications, since the information was employed only to counter matters brought out in support of the insanity defense.

Similarly, the government's cross-examination as to statements Stockwell made to personnel at a VA hospital was permissible to challenge his contention on direct that he had no "dry periods" of any length since 1974 or 1975. In contrast to that testimony, Stockwell had informed the VA personnel that he had been dry for four months in August of 1982. The prosecutor's question regarding "a lot of prefabrication [sic]

throughout your life" was a justifiable response to Stockwell's statement that he had lied to the VA personnel. It was not, as Stockwell claims, an example of improper use of collateral material gleaned from the psychiatric examination.

■ Moreover, the district court sustained objections to the line of questioning which most arguably ventured beyond the proper bounds of the question of Stockwell's sanity, namely, the prosecutor's cross-examination as to incidents in which the defendant purportedly lied to or otherwise mistreated his former wives.[5] Obviously, matters as to which the defendant prevailed on his objections do not provide a basis for challenge on appeal.

■ In sum, we conclude that the cross-examination did not violate the strictures of Rule 12.2(c).[6]

Stockwell raises the further question, however, of whether the method by which the prosecutor informed herself of the results of the psychiatric examination violated Rule 12.2(c) and his Fifth Amendment right against self-incrimination. Despite Stockwell's objection to the prosecutor's presence during the examination, the prosecutor later listened to a tape recording of Stockwell's interviews with the psychiatrist. Stockwell's attorney then filed a pretrial motion asking the court either to dismiss the indictment or to require the government to demonstrate, in a hearing, that the evidence it intended to offer at trial on issues other than sanity was based entirely on its independent investigatory efforts and not on the information obtained in or derived from the examination. Stockwell contended that the latter course was warranted by analogy to the procedure prescribed by *Kastigar v. United States,* 406

(5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984).

**5.** Trial Record at 247–49, *reprinted in,* Joint Appendix at 105–07.

**6.** In view of this conclusion, we need not address the question whether the cross-examination was permissible on the alternative ground

that any statements made to the government psychiatrist could probably be used to impeach Stockwell once he took the stand, by analogy with the rule of *Harris v. New York,* 401 U.S. 222, 223–26, 91 S.Ct. 643, 644–46, 28 L.Ed.2d 1 (1971). *Compare United States v. Leonard, supra,* 609 F.2d at 1166–67 *with Booker v. Wainwright,* 703 F.2d 1251, 1258–59 (11th Cir.1983).

U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), for the situation in which the government prosecutes an individual who has previously testified on the subject matter of the prosecution under a grant of use immunity.

Under *Kastigar,* if the government wishes to proceed with the prosecution, it bears an affirmative duty to establish that the evidence it intends to offer derives from a source entirely independent of the immunized testimony.[7] Stockwell argues that such a procedure is equally necessary to protect a defendant's Fifth Amendment rights when the prosecutor has directly monitored a defendant's compelled statements to a government psychiatrist. Stockwell concedes that the prosecutor must be permitted to discuss the results of the examination with the government psychiatrist, but contends that such discussion does not imperil a defendant's Fifth Amendment rights because a psychiatrist's report to the prosecutor is directed only to the issue of sanity and not to extraneous matters that might aid the government in preparing other aspects of its case. A *Kastigar* -type hearing was necessary in this case, Stockwell contends, because the prosecutor's direct monitoring of his statements created an intolerable risk of abuse of Stockwell's right against self-incrimination.

The situation of a defendant who raises an insanity defense, however, is not entirely analogous to that of an immunized witness who is later prosecuted. The evidence obtained from a defendant in a government psychiatric examination is admissible against the defendant, albeit only on the limited issue of insanity, while testimony immunized under 18 U.S.C. § 6002 cannot be used in any manner in a prosecution of the defendant. Since there is nothing presumptively improper in the government's use of the results of a psychiatric examination at trial, it would be illogical to conclude that the conducting of such an examination gives a defendant an automatic right to a hearing in which the government must demonstrate that it does not intend to misuse the information it has obtained.

■ Moreover, while we do not wish to encourage the practice of requiring defendants to submit to a psychiatric examination in the prosecutor's presence (either in person or through the use of a tape recording), such a procedure cannot be said to constitute a *per se* violation of Rule 12.2(c) and the defendant's Fifth Amendment rights. The question whether Rule 12.2(c) and the defendant's right against self-incrimination have been violated in a particular case hinges on the use to which the material obtained in the examination is put, and not primarily on the method by which the prosecutor learns of the results of the examination from the psychiatrist. As Stockwell concedes, the prosecutor has to obtain information about the results of the psychiatric examination in some manner. As long as the prosecutor restricts his or her use of the defendant's statements to the issue of insanity, there is no violation of the Rule or of the defendant's constitutional rights.

Nevertheless, we believe prosecutors would be well advised to avoid direct monitoring of the psychiatric examination, particularly in light of the recent amendment to Rule 12.2(c). It is not difficult to conceive of circumstances, not present here, where the government's conduct of the trial might raise a significant question as to whether it had improperly used information obtained in the psychiatric examination to develop evidence going beyond the issue of insanity. In such circumstances, the extent of the government's access to the defendant's statements would certainly be a factor to be considered in determining whether a *Kastigar* -type hearing is necessary to investigate the use made of the statements. Reliance on the psychiatrist's report of the results of the examination is less likely to raise questions about possible overreaching than an insistence on direct monitoring of the examination over the defendant's objections.

---

**7.** *See also United States v. Kurzer,* 534 F.2d 511, 517 (2d Cir.1976); 18 U.S.C. § 6002 (1982).

## II.

Stockwell also contends that the indictment should have been dismissed pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161–74 (1982). He argues that the Act provides no exclusion for the time during which a sanity examination is conducted, and that the indictment must therefore be dismissed because more than 70 non-excludable days elapsed before he was brought to trial. The government asserts that the time required to complete a psychiatric examination is excludable either under Section 3161(h)(1)(A), which provides for exclusion of the time required for a proceeding to determine "mental competency or physical incapacity" of the defendant, or under section 3161(h)(8), which authorizes the court to grant a continuance in the interest of justice.

Section 3161(h)(1)(A) requires the exclusion of any period of "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A) (1982). Stockwell argues that this exclusion applies by its terms only to delay resulting from evaluations to determine a defendant's competency to stand trial, and not to delay attributable to psychiatric examinations conducted in connection with an insanity defense.

■ The argument is unpersuasive. The courts which have considered the question whether 3161(h)(1)(A) applies to evaluations to determine a defendant's sanity or insanity have concluded that it does. *United States v. Crosby*, 713 F.2d 1066, 1077–78 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). *See also United States v. Gilliss*, 645 F.2d 1269, 1284 (8th Cir.1981). The reasons for this are clear. It defies common sense to assume that Congress would have provided an exclusion for competency examinations in recognition of the delays inherent in such proceedings, but not for sanity examinations which can be equally or more time-consuming and crucial to the outcome of a case. As stated in *United States v. Crosby, supra*, 713 F.2d at 1078, "[d]elays for the purposes of evaluating an insanity defense are commonplace and well known.... It would circumvent Congress' intention to provide for a period allowing delays for mental examinations if we interpreted the statute to exclude time for this relatively common and often lengthy type of examination."

Adoption of the defendant's interpretation of Section 3161(h)(1)(A) would mean that, in every case in which an insanity defense is raised, a decision as to the excludability of time required for psychiatric evaluation would have to be made, if at all, on an *ad hoc* basis under the general provision of Section 3161(h)(8) which permits a continuance upon a specific finding that "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8) (1982). An *ad hoc* determination is reasonable in addressing situations which cannot easily be foreseen and made the subject of a specific exception, but not in addressing matters which recur on a regular basis in criminal proceedings.[8]

The district court did not err in refusing to dismiss the indictment pursuant to the Speedy Trial Act.

The judgment of the district court is affirmed.

---

8. We also note that the Guidelines to the Administration of the Speedy Trial Act, issued by the United States Judicial Conference, state that Section 3161(h)(1)(A) "covers proceedings related to the insanity defense as well as those related to competency or capacity to stand trial." *Guidelines to the Administration of the Speedy Trial Act of 1974,* as amended, December 1979 revision (with August 1981 amendments), at 27.