**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**HARRY TAYLOR aka TAPU AVALOGO TAYLOR, Defendant**

High Court of American Samoa
Trial Division

CR No. 8-90

May 14, 1991

Before REES, Associate Justice, AFUOLA, Associate Judge, MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Thomas E. Dow, Assistant Attorney General
For Defendant, Barry I. Rose, Assistant Public Defender

On Motion for Bifurcated Trial:

Defendant, having served notice of his intention to rely on defenses of insanity and/or of diminished mental capacity, now moves for a bifurcated trial. The prosecution has no objection, provided that the nature and scope of each part of the proposed proceeding are made clear.

In the proceeding contemplated by defendant's motion, the defendant would first be tried for the crimes with which he has been charged, without reference to any mental disease or defect or to the effect, if any, of such defect on guilt or innocence. If and only if the defendant is found guilty of one or more of the offenses charged (or of some lesser included offense or offenses), the trial would proceed to its second stage. In the second stage of the proceeding, the defendant would present testimony, including but not limited to expert evidence, of the alleged mental disease or defect, and the prosecution would have the opportunity to offer evidence to rebut or refute the defendant's evidence.

The proceeding contemplated by the defendant's motion is not squarely within the language of the statutory authorization for bifurcated proceedings provided in A.S.C.A. §§ 46.1301 et seq. The statute speaks in terms of a division of the inquiry into whether the defendant "committed the criminal act charged" and whether he was "insane at the time of the commission of the criminal act." A.S.C.A. §§ 46.1301-.1302.

A defense of diminished mental capacity speaks to a question that is conceptually somewhere in between the two questions contemplated by our statute: whether defendant "committed the . . . act charged" and, if so, whether he was "insane" at the time. This question --- whether a mental disease or defect, although not rendering the defendant "insane," nevertheless prevented him from having the requisite state of mind to be guilty of the crime with which he is charged --- is arguably comprehended within the question whether the defendant "committed the *criminal* act charged." This is because one who commits the act without the requisite intent has arguably not committed a "criminal" act. If so, diminished mental capacity should be considered within the first ("guilt") stage of a bifurcated proceeding, not within the second ("insanity") stage.

Such a division, however, would defeat the obvious purpose of the statute. Bifurcated trials are designed to make it possible for a government expert witness --- to whose examination the defendant may

be lawfully compelled to submit after putting his own mental capacity at issue --- to testify about his observations of the defendant's mental condition without incidentally affecting the jury's decision about whether the defendant was otherwise guilty of the crime charged. Such testimony may, in some circumstances, include statements made by the defendant to the expert witness during the compelled examination. Although the witness may testify only about the alleged mental disease or defect and not about "guilt or innocence" (i.e., about whether the defendant would be guilty in the absence of any such disease or defect), evidence about how the defendant's mind works may have a strong tendency to influence the jury's determination of what sorts of things he might have done and intended. If the evidence about mental condition seems highly probative of other issues --- and especially when such evidence consists partly of the defendant's own statements --- a limiting instruction may be ineffective.

A bifurcated trial solves this problem by not exposing the jury to such evidence until and unless the jury first makes an independent finding that the defendant committed the act charged. Where the crime includes an intent element, a finding of guilt in the first part of the trial also implicitly includes a finding that the defendant either had the requisite intent or would have had it but for the mental disease or defect.

Despite the tendency of bifurcated trial statutes to describe the subject of the second part of the proceeding as "insanity" rather than as "mental disease or defect," a defense of diminished mental capacity falling short of insanity not only is conceptually similar to the insanity defense but also is likely to be supported by the same kinds of evidence and to present the same practical problems. Specifically, a defendant who puts his mental capacity at issue must submit to an examination by an expert witness for the prosecution, and the expert may testify about his observations and conclusions. This is true even though the expert's observations and conclusions about diminished capacity other than insanity may be seen as directly relevant to "guilt" rather than to "sanity" --- i.e., to a mental element of the crime itself rather than to a side constraint on conviction. *See United States v. Halbert*, 712 F.2d 388 (9th Cir. 1983). Where the mental disease or defect is alleged to have resulted in "incapacity to intend" rather than in "insanity," the expert's testimony must be limited to the question of such incapacity and may not be considered by the jury for any other purpose. *See id.* at 390.

If anything, however, diminished-capacity evidence is even more likely than insanity evidence to seem highly probative of other issues in

the case, particularly of questions about the defendant's mental state that are theoretically distinct from the question whether the defendant's mind was so diseased or defective that he could not possibly have had the requisite state of mind. It is therefore even less likely in diminished-capacity cases than in insanity cases that a limiting instruction would effectively erect a wall of evidentiary separation between the disease-or-defect question and the question of "guilt but for the defect."

Logically, therefore, both the defendant's interest in a fair trial, untainted by inadvertent self-incrimination, and the interest of all concerned in an orderly proceeding would be better served by reserving all evidence of mental disease or defect for the second part of a bifurcated proceeding rather than combining it with the inquiry into whether defendant would otherwise be guilty. The case for such reservation is particularly compelling where, as in the present case, the defendant wishes to present essentially the same evidence to support *both* an insanity defense *and* a defense of diminished capacity.

Accordingly, we order that the trial set for May 28, 1991, will be a bifurcated proceeding.

The first part of the proceeding will be limited to evidence of whether the defendant is or would be guilty, assuming the absence of any mental disease or defect such as would render him incapable of understanding the difference between right and wrong, incapable of conforming his conduct to such a standard, *or* otherwise incapable of having any requisite mental element of the crimes charged or of any lesser-included offenses. Although this stage of the proceeding will necessarily be very much concerned with what the defendant was or was not thinking at various times relevant to the offenses charged, neither party may address such questions by way of expert testimony from psychiatrists or psychologists or by other evidence calculated to show that defendant did or not have a mental disease or defect.

Nor may the government make any use during this stage of the proceeding of statements made by the defendant to the government's expert witness or of any evidence discovered as a result of such statements that would not ultimately have been discovered had the statements not been made. *See United States v. Stockwell*, 743 F.2d 123 (2d Cir. 1984); *cf. Nix v. Williams*, 467 U.S. 371 (1984). (The Court can imagine relaxing these rules if the defendant should open the door to otherwise-inadmissible evidence by putting some fact at issue which could

only be effectively addressed by such evidence and under such circumstances as would require its admission in the interest of justice.)

If the defendant is found guilty of one or more crimes in the first stage of the bifurcated proceeding, it will proceed to the second stage. At this stage the defendant may present evidence, including but not limited to expert testimony, that he had a mental disease or defect such as would *either* support an insanity defense *or* tend to negate the existence of any requisite mental elements of the crime or crimes found in the first stage of the proceeding or of any lesser-included offenses. The government may offer similar evidence in rebuttal.

The jury will then be instructed to consider this evidence, along with the evidence presented at the first stage of the proceeding, and to deliver one or more special verdicts in response to questions put in writing by the Court. For instance, if the defendant were to be found guilty of murder in the first degree, the jury might be asked to decide whether the defendant suffered from a mental disease or defect which caused him to be unable to understand the difference between right and wrong or to conform his conduct thereto (the question of insanity); whether he suffered from a mental disease or defect which caused him to be unable to "deliberate" (the distinctive mental element of first-degree murder); whether he suffered from a mental disease or defect which caused him to be unable to do a certain act "purposely," "knowingly," or "recklessly" (elements required for various forms of second-degree murder); and other questions relevant to appropriate lesser-included offenses. If the answer to any of these questions should be affirmative, the Court would modify (i.e., reduce) the general verdict given after the first stage of the trial as necessary to conform it to the special verdicts given after the second stage.

Should the trial proceed to its second stage, the government would not then be prohibited from using evidence obtained during its expert's examination of the defendant or as a result of such evidence, including but not limited to statements made by the defendant to the expert, provided such evidence is not inadmissible under some other rule of law or evidence.

For the record, we note that the Court has discussed the defendant's motion and the implications and possible consequences thereof in a pre-trial conference with counsel for the defense and the prosecution. We find that the motion reflects a considered and intelligent decision by defense counsel to maximize the chances for a fair trial and

to minimize the risks to which the defendant might otherwise be exposed by putting at issue the questions of insanity and diminished capacity. The implicit waiver of any objection to a procedure which, although clearly consistent with the legislative purpose of the bifurcated-trial statute, is not clearly authorized by the letter thereof, we find to have been made after thorough and careful consideration of these objectives.