# Disclosure to the Government, During the Guilt Phase of a Trial, of the Results of a Court-Ordered Mental Examination

The Fifth Amendment privilege against self-incrimination does not prohibit disclosure to the government, during the guilt phase of a trial, of the results of a court-ordered mental examination.

September 21, 1998

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION

This memorandum responds to the Criminal Division's request for our opinion whether certain limitations on the disclosure of results of a court-ordered mental examination in a capital case are required to protect a defendant's Fifth Amendment privilege against compelled self-incrimination. In particular, the limitations would prevent disclosure, during the guilt phase of a capital trial, of the results of a mental examination ordered upon a defendant's notice of intent to introduce evidence of a mental condition bearing upon sentencing. As discussed below, principally because the Fifth Amendment's privilege against self-incrimination protects against the prosecution's direct or indirect use of compelled statements in a criminal case, not against the prosecution's possession of or access to such statements, we do not believe that a rule lacking such limitations would be facially defective. Nevertheless, in any given case, adherence to such limitations may aid the prosecution in establishing that, during the guilt phase of a capital trial, it made no use of statements, or the fruits of statements, obtained through a court-ordered mental examination of the defendant.

## I. Background

This memorandum supplements our earlier advice regarding proposed amendments to Rule 12.2 of the Federal Rules of Criminal Procedure. *See* Memorandum for John C. Keeney, Acting Assistant Attorney General, Criminal Division, from Todd David Peterson, Deputy Assistant Attorney General, Office of Legal Counsel, *Proposed Revisions to Rule 12.2* (Apr. 20, 1998). The Advisory Committee on Criminal Rules has voted to approve in concept two amendments to Rule 12.2. The first would clarify that Rule 12.2(c) empowers a district court to order a mental examination of a defendant who gives notice under Rule 12.2(b) of an intent to offer expert testimony relating to a mental condition bearing on the issue of guilt. The second would amend Rules 12.2(b) and 12.2(c) to require reasonable notice to the government when the defendant in a capital case intends to offer expert testimony on a mental condition relevant to the issue of capital punishment and to allow the court to require the defendant to submit to a mental examination when such notice is given. The Department of Justice offered amend-

222

atory language for consideration at the Advisory Committee's April 27–28, 1998, meeting.[1] *See* Letter for David A. Schlueter, Professor of Law, St. Mary's University School of Law, from Mary Frances Harkenrider, Counsel to the Assistant Attorney General, Criminal Division and Roger A. Pauley, Director of Legislation, Office of Policy and Legislation, Criminal Division at 1–2 (Dec. 8, 1997) ("Criminal Division Letter").

In our previous advice concerning the proposed amendments, we concluded (1) that the prosecution's use of evidence from a compelled psychiatric examination to rebut a defendant's testimony on mental status would not infringe a defendant's Fifth Amendment privilege against self-incrimination; and (2) that a federal court can constitutionally compel such an examination upon the defendant's filing of a notice to present evidence bearing upon guilt or capital sentencing, so long as the results of the examination are used solely in rebuttal and properly limited to the issue raised by the defense. We observed that current Rule 12.2(c) expressly meets this requirement: It provides that no statement made by the defendant during a court-compelled examination, no expert testimony based on the statement, and no other fruits of the statement shall be admitted in evidence against the defendant "except on an issue" respecting mental condition on which the defendant has introduced testimony." We noted that proposed Rule 12.2(c) included an additional safeguard for cases in which a capital defendant provides notice of intent to introduce expert testimony concerning a mental condition bearing upon sentencing: Amended Rule 12.2(c) generally would prohibit the disclosure of the results of a court-compelled examination to any attorney for the government "unless and until the defendant is found guilty of one or more capital crimes and confirms

---

[1] The Department's proposed rule is set forth below (with new matter italicized):
**Rule 12.2**

    **(b) Expert Testimony of Defendant's Mental Condition.** If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition bearing upon *(1)* the issue of guilt *or (2) whether in a capital case, a sentence of capital punishment should be imposed,* the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate

    **(c) Mental Examination of Defendant.** In an appropriate case *pursuant to statutory authority or in which notice by the defendant has been given under subdivision (a) or (b),* the court may, upon motion of the attorney for the government, order the defendant to submit to an examination. *The examination shall be conducted* pursuant to 18 U.S.C 4241 *et seq or, in a case involving notice under subdivision (b), as otherwise ordered by the court. The results of an examination conducted solely pursuant to notice under subdivision (b)(2) shall not be disclosed to any attorney for the government unless and until the defendant is found guilty of one or more capital crimes and confirms his or her intent to offer mental condition evidence in mitigation at the sentencing phase, except that such results may be earlier disclosed to an attorney for the government if the court determines (1) such attorney is not, and will not communicate the results to, an attorney responsible for conducting the prosecution on the issue of guilt, or (2) such disclosure will not tend to incriminate the defendant on the issue of guilt* No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony

223

his or her intent to offer mental condition evidence in mitigation at the sentencing phase.'' Criminal Division Letter at 2. Disclosure before the defendant is found guilty would be permitted, however, if the district court determines (1) that the attorney for the government ''is not, and will not communicate the results to, an attorney responsible for conducting the prosecution on the issue of guilt'' or (2) that disclosure ''will not tend to incriminate the defendant on the issue of guilt.'' *Id.* Our previous memorandum expressed no view on whether these disclosure limitations are constitutionally required. Following the April 27–28 meeting of the Advisory Committee, you asked us to consider whether these disclosure limitations are necessary to protect a defendant's Fifth Amendment privilege against self-incrimination.

## II. Discussion

As noted, current Rule 12.2(c) provides that no statement made by the defendant during a court-compelled examination, no expert testimony based on the statement, and no other fruits of the statement shall be admitted in evidence against the defendant ''except on an issue respecting mental condition on which the defendant has introduced testimony.'' There appears to be no proposal to eliminate this provision. Accordingly, for all cases in which the court is authorized to order an examination of the defendant—including, under the proposed amendment, cases involving a capital defendant who intends to introduce mental health evidence solely at sentencing—proposed Rule 12.2(c) would prohibit the use at trial of a defendant's statement or its fruits, except in rebuttal to the defendant's presentation of evidence. The question, then, is whether the defendant's Fifth Amendment privilege against self-incrimination protects against *more* than the prosecution's use at trial of the defendant's statement or its fruits—that is, whether the defendant's Fifth Amendment privilege protects against the prosecution's mere possession of or access to the results of a court-ordered mental examination.

### A.

For purposes of this section, we assume that any waiver of a defendant's privilege against self-incrimination occurs when the defendant in fact introduces mental status testimony, rather than when the defendant gives notice of an intent to do so. On this theory, the statements the defendant makes at a pretrial court-ordered examination are in some sense ''compelled.'' *Kastigar v. United States*, 406 U.S. 441 (1972), the leading Supreme Court case on the constitutionality of the federal witness immunity statute, 18 U.S.C. § 6002 (1994), offers some guidance on the extent to which the prosecution may make use of compelled statements. Under § 6002, a court may compel a witness to testify over a claim of the privilege against self-incrimination, ''but no testimony or other information compelled

under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." *Id.* at 448–49. In *Kastigar*, the petitioners, individuals found in contempt of court for failing to testify before a grand jury after the district court ordered them to testify under a grant of immunity pursuant to § 6002, claimed that their refusal to comply with the district court's order was justified by the fact that the statute's grant of immunity was not coextensive with the Fifth Amendment privilege against self-incrimination. The Court rejected this claim:

> The statute's explicit proscription of the use in any criminal case of "testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information)" is consonant with Fifth Amendment standards. We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. . . . [The] sole concern [of the privilege] is to afford protection against being "forced to give testimony leading to the infliction of penalties affixed to . . . criminal acts." Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection.

*Kastigar*, 406 U.S. at 453 (second ellipsis in original) (footnote omitted). The language of *Kastigar* thus suggests that an infringement of the Fifth Amendment privilege against self-incrimination occurs not by virtue of the prosecution's mere possession of or access to compelled testimony, but by the "use and derivative use" of such compelled testimony. Indeed, in dictum in *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), the Court relied on this passage in *Kastigar* to distinguish between the operation of the Fifth Amendment's privilege against self-incrimination and the Fourth Amendment's prohibition on unreasonable searches and seizures: "Although conduct by law enforcement officials prior to trial may ultimately impair [the defendant's privilege against self-incrimination], a constitutional violation occurs only at trial. The Fourth Amendment functions differently. It prohibits unreasonable searches and seizures whether or not the evidence is sought to be used in a criminal trial, and a violation of the Amendment is fully accomplished at the time of an unreasonable governmental intrusion." 494 U.S. at 264 (internal quotation marks and citation omitted).[2]

---

[2] In the recent case of *United States v Balsys*, the Court assumed for purposes of its analysis that the Fifth Amendment protects "against the Government's very intrusion through involuntary interrogation " 524 U S 666, 691 (1998). The Court rejected a defendant's claim that such protection is unconditional and therefore prevents the government from interrogating one who fears prosecution abroad In connection with its assumption, however, the Court

Continued

The Fifth Circuit recently recognized this distinction between a prosecutor's permissible access to compelled information and the unconstitutional use of such information against a defendant at trial. In *United States v. Hall*, 152 F.3d 381 (5th Cir. 1998), *cert. denied*, 526 U.S. 1117 (1999), the district court required a capital defendant to submit to a psychiatric examination by the government if the defendant wished to present his own psychiatric evidence in mitigation of punishment. Hall claimed on appeal that the district court should not have required him to submit to the government's examination absent an order denying the prosecution access to the results of the examination by requiring that those results remain under seal until the trial's penalty phase, noting that such a safeguard had been imposed in previous cases. *Id.* at 399 (citing *United States v. Beckford*, 962 F. Supp. 748, 761 (E.D. Va. 1997); *United States v. Haworth*, 942 F. Supp. 1406, 1408–09 (D.N.M. 1996); *United States v. Vest*, 905 F. Supp. 651, 654 (W.D. Mo. 1995)). The Fifth Circuit rejected the claim. While the court acknowledged that requiring that the results of a mental examination remain under seal until the penalty phase served "interests of judicial economy" by making it unnecessary for the court to determine whether the prosecution had made use of that material, it nonetheless concluded that "such a rule is not constitutionally mandated." *Id.* The court based this conclusion in part on the fact that the current version of Rule 12.2—which protects a defendant who is compelled to undergo a psychiatric examination by prohibiting the government from introducing the results of the examination as evidence before the defendant actually places his sanity in issue but does not forbid the prosecutor to obtain access to the results before that time—has "consistently been held to comport with the Fifth Amendment." *Id.* at 400 (citing *United States v. Lewis*, 53 F.3d 29, 35 n.9 (4th Cir. 1995); *United States v. Stockwell*, 743 F.2d 123, 127 (2d Cir. 1984)).

Similarly, several courts of appeals have considered, in the context of civil suits against state or local officials, whether use of a compelled statement in a criminal proceeding is a necessary element of a claimed infringement of the privilege against self-incrimination. The weight of authority suggests that, to claim a violation of the privilege, a plaintiff must allege the use of a statement in a criminal proceeding. *See Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir.) ("[F]ollowing the plain text of the Amendment that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself,' most courts refuse to find a Fifth Amendment violation even where statements were made, but were not actually used in a criminal proceeding" (alterations in original)), *cert. denied*, 522 U.S. 1030 (1997); *Weaver v. Brenner*, 40 F.3d 527, 535–36 (2d Cir. 1994) (rejecting the view that act of compelling a statement from the defendant is alone sufficient to state a Fifth Amendment violation; adopting view that "use of the

acknowledged and did not question *Verdugo-Urquidez*'s statement that a violation of the privilege against self-incrimination occurs at trial, not when the testimony is taken. *Id* at 692 n 12 Accordingly, we do not take the Court's discussion in *Balsys* to cast doubt upon *Kastigar*'s focus on use and derivative use of compelled testimony in a criminal case or upon the Court's reliance upon this focus in *Verdugo-Urquidez*.

compelled statements against the maker in a criminal proceeding'' and finding that statements were improperly used before the grand jury (internal quotation marks and citation omitted)); *Mahoney v. Kesery*, 976 F.2d 1054, 1061 (7th Cir. 1992) (''Fifth Amendment does not forbid the forcible extraction of information but only the use of information so extracted as evidence in a criminal case'' (citation omitted)); *Davis v. City of Charleston*, 827 F.2d 317, 322 (8th Cir. 1987) (finding no Fifth Amendment violation where suspect's statements were not used against her during trial). The Ninth Circuit alone has held otherwise. *See Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir.) (en banc) (holding that § 1983 claim for infringement of privilege against self-incrimination was stated by allegations that the plaintiff's statements were compelled, although the statements were never used), *cert. denied*, 506 U.S. 953 (1992). *See generally Guiffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) (in qualified immunity context, concluding that plaintiff's Fifth Amendment claim against county officers who interrogated him did not rely on clearly established law; noting that the Ninth Circuit ''broke new ground'' in *Cooper* and that ''[t]he dissenting judges in *Cooper* presented a persuasive argument that the Fifth Amendment privilege against self-incrimination is not violated until evidence is admitted in a criminal case''); Arnold H. Loewy, *Police-Obtained Evidence and the Constitution: Distinguishing Unconstitutionally Obtained Evidence from Unconstitutionally Used Evidence*, 87 Mich. L. Rev. 907, 921 (1989) (arguing that ''unlike fourth amendment rights, fifth amendment rights are not violated unless and until the statement is used against the person making it'').

If a violation of a defendant's Fifth Amendment privilege against self-incrimination occurs through the use in a criminal case of the defendant's compelled statements or the fruits of such statements, it follows that a limitation on the use of statements obtained through a court-ordered mental examination of the defendant, or the fruits of such statements, is sufficient to protect the Fifth Amendment interests of a defendant who intends to raise a mental status defense. Put another way, even if statements made at a court-ordered mental examination following a notice of intent to introduce mental status evidence are properly viewed as ''compelled'' statements, it is the prosecution's *use* of such statements or their fruits at a criminal proceeding, not the fact that such statements were acquired or the prosecution's mere possession of them, that triggers any infringement of the defendant's Fifth Amendment privilege against self-incrimination.

We note that there is presently some tension among the circuits on a related issue that arises in connection with § 6002: whether the statute and the Fifth Amendment's privilege against self-incrimination prohibit so-called ''nonevidentiary'' uses of compelled testimony. Courts' treatment of this question may reflect how expansively they define the category of nonevidentiary uses. At least four courts of appeals have concluded that the Fifth Amendment privilege against self-incrimination does not prohibit nonevidentiary uses of compelled testimony,

227

where nonevidentiary use is described essentially as use by the prosecution in shaping its general trial strategy.[3] Other circuits, discussing an arguably broader category of possible nonevidentiary uses, have held that the Fifth Amendment bars such uses.[4]

We do not believe that cases concerning nonevidentiary uses of immunized testimony call into question the conclusion that the prosecution's possession of or access to statements obtained through a mental health examination ordered pursuant to Rule 12.2 is permissible under the Fifth Amendment. No court has held that the mere knowledge by the prosecution of compelled statements violates the Fifth Amendment. Any disagreement within the case law on what constitutes an impermissible "use" of a compelled statement does not bear upon the constitutional question whether a prosecutor may gain access to the results of a court-ordered psychiatric examination before the defendant seeks to place his mental condition in issue at trial. Rather, the conflicting authority bears upon whether a restriction on the prosecution's access should be adopted as a matter of policy. In those jurisdictions in which the tangential, nontestimonial "use" of compelled statements is deemed to violate the Fifth Amendment, the fact that a prosecutor has not had access to the results of a court-ordered examination will plainly make it easier to prove that the results of the examination have not been put to any improper use. *See Hall*, 152 F.3d at 399. In contrast, as a practical matter, a prosecutor who has had such access may be unable to prove that no improper use occurred.

---

[3] *See United States v Serrano*, 870 F 2d 1, 17–18 (1st Cir 1989) (rejecting the view that Fifth Amendment is violated "merely because the immunized testimony might have tangentially influenced the prosecutor's thought processes in preparing the indictment and preparing for trial" (internal quotation marks omitted)), *United States v Mariani*, 851 F 2d 595, 601 (2d Cir. 1988) (tangential influence of immunized testimony on trial preparation does not constitute an impermissible use, "In view of the government's convincing proof that the evidence upon which it based its prosecution of Mariani came from legitimate independent sources, we cannot see how the government prosecutors' knowledge of Mariani's immunized testimony could be considered an impermissible use of that testimony "), *cert denied*, 490 U.S 1011 (1989), *United States v Velasco*, 953 F 2d 1467, 1474 (7th Cir 1992) (assuming that prosecution used defendant's proffer of testimony, made pursuant to an agreement under which government could not use the proffer against the defendant, "to shape [its] trial strategy," but concluding that *Kastigar* does not prohibit such use "[M]ere tangential influence that privileged information may have on the prosecutor's thought process in preparing for trial is not an impermissible 'use' of that information "), *United States v Byrd*, 765 F 2d 1524, 1531 (11th Cir 1985) (examining whether "advertent[ ] or inadvertent[ ] benefit" that prosecutor would derive "by virtue of consulting with investigative agents or others who have been exposed to the immunized testimony during the course of the . . investigation" would constitute an improper use under *Kastigar*; concluding that "a violation of the privilege against self-incrimination would not occur in any event unless such 'use' of the immunized testimony resulted in the introduction of evidence not obtained wholly from independent sources"); *see also United States v. Crowson*, 828 F.2d 1427, 1431–32 (9th Cir. 1987) (declining to decide whether nonevidentiary use comes within the prohibition of § 6002, but suggesting that, so long as government proves a prior, independent source for its evidence, any nonevidentiary use will be harmless), *cert denied*, 488 U S 831 (1988)

[4] *See United States v McDaniel*, 482 F 2d 305, 311 (8th Cir 1973) (reasoning that prosecutor's exposure to immunized testimony could assist the prosecutor in "focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy"; finding such uses impermissible), *United States v Semkiw*, 712 F 2d 891, 894 (3d Cir 1983) (following *McDaniel*); *see also United States v North*, 910 F 2d 843, 856 (D C. Cir.) (discussing tension among circuits on whether nonevidentiary uses of immunized testimony are permissible, assuming without deciding that such uses are impermissible), *modified in part*, 920 F 2d 940 (D C. Cir 1990), *cert. denied*, 500 U S 941 (1991)

In sum, because the Fifth Amendment privilege against self-incrimination protects against the use in a criminal case of a defendant's compelled statements or the fruits of such statements, not against the prosecution's mere possession of or access to such statements, a limitation on the use of statements obtained through a court-ordered mental examination of the defendant, or the fruits of such statements, is sufficient to protect the Fifth Amendment interests of a defendant who intends to introduce testimony on mental status. A rule lacking safeguards restricting the prosecution's access to the results of a court-ordered mental examination would not appear to be facially invalid under the Fifth Amendment.

B.

The conclusion that a rule lacking safeguards restricting the prosecution's access to the results of a court-ordered mental examination would not be facially defective under the Fifth Amendment does not necessarily end the inquiry. In any given case, adherence to safeguards such as those proposed in Rule 12.2(c) may aid the prosecution in establishing that, during the guilt phase of a capital trial, it made no use of statements, or the fruits of statements, obtained through a court-ordered mental examination of the defendant in connection with a notice of intent to introduce mental status testimony at sentencing. The importance of such safeguards depends largely on what kind of burden a court would place upon the prosecution in connection with a defendant's claim that the prosecution directly or indirectly used statements to which it was exposed by virtue of the sentencing-related mental examination.

The Fifth Circuit's analysis in *Hall* provides some guidance on this question. In *Hall*, the defendant claimed that an order sealing the results of the court-ordered mental examination was required to protect his Fifth Amendment privilege against self-incrimination. Otherwise, the defendant argued, "he could have no guarantee that the government would not utilize the results of the examination or the fruits thereof as evidence in the guilt phase of his trial." 152 F.3d at 399. In rejecting this claim, the Court of Appeals concluded that a defendant contending that there had been improper use of the fruits of a mental examination " 'must go forward with specific evidence demonstrating taint,' upon which the government 'has the ultimate burden of persuasion to show that its evidence is untainted.' " *Id.* (quoting *Alderman v. United States*, 394 U.S. 165, 183 (1969)). This evidentiary framework, the court concluded, "provides all of the protection against the introduction of the fruits of the government psychiatric examination prior to Hall's introduction of psychiatric evidence that the Constitution requires." *Id.*

In theory, the requirement that the defendant provide "specific evidence demonstrating taint" before the government is put to the burden of establishing that its evidence is untainted would distinguish cases involving prosecution access to a court-ordered mental examination from cases involving prosecution access to

immunized testimony. Under *Kastigar*, a defendant "need only show that he has testified under a grant of immunity [to matters related to the charges in the case] to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." 406 U.S. at 461–62; *see id.* at 460 ("A person accorded [use and derivative-use] immunity . . . and subsequently prosecuted, is not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities. . . . '[T]he [prosecuting authorities] have the burden of showing that their evidence is not tainted by establishing. that they had an independent, legitimate source for the disputed evidence.' This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.") (citations omitted). To the extent that *Kastigar* requires the government to bear the "heavy burden" of establishing the sources of its evidence upon a relatively low threshold showing by the defendant, a policy preventing a prosecutor handling a particular criminal case from obtaining access to previous immunized testimony might be desirable because it would help the government in making the required showing. If a defendant who undergoes a court-ordered mental examination must make a higher threshold showing before the government is required to demonstrate an independent source for its evidence, a policy insulating a prosecutor from the results of the examination may take on less importance.

*Hall* appears to be the sole case directly addressing the proper evidentiary framework for a capital defendant's claim that the prosecution has improperly used the fruits of a court-ordered mental examination during the guilt phase of the trial. A handful of district courts have in capital cases imposed safeguards to ensure that the prosecution does not acquire the results of a mental health examination prior to the jury's verdict in the guilt phase, although it is unclear whether those safeguards were imposed for constitutional or prudential reasons. *See Beckford*, 962 F. Supp. at 764 (requiring the submission of results of examination under seal; "The results of any examination by the Government experts and the defense experts shall be released to the Government only in the event that the jury reaches a verdict of guilty on a capital charge as to that defendant, and only after that defendant confirms his intent to offer mental health or mental condition evidence in mitigation.") (footnote omitted); *Haworth*, 942 F. Supp. at 1408 (ordering that results of independent examination be filed under seal and released only after jury reaches guilty verdict); *Vest*, 905 F. Supp. at 654 (ordering that the results of mental health examination be released to the government "at the Court's discretion, and only in the event that the jury reaches a verdict of guilty as to that defendant"). One of these courts justified its order in part on the fact that "[m]aking the report of the examination available to the prosecution before [the] conclusion of the guilt phase would . . . lead to difficult problems respecting

the source of prosecution evidence and questioning in the guilt phase." *Beckford*, 962 F. Supp. at 762 n.11.

It is difficult to predict whether other courts will adopt the evidentiary framework that the Fifth Circuit found appropriate in *Hall*. The resolution of the issue may turn in part on the validity of an assumption made earlier in our discussion, that testimony provided at a court-ordered examination is "compelled" in the same sense as testimony given under a grant of use and derivative-use immunity. *See supra* p. 225. The Fifth Amendment problem would not arise if a court decided that a defendant's notice of an intent to introduce mental health evidence is similar to a defendant's notice that he will present an alibi defense: The information that the defendant is required to provide in connection with the notice is not properly viewed as "compelled." In *Williams v. Florida*, 399 U.S. 78 (1970), the Supreme Court upheld a Florida notice-of-alibi statute against a claim that the statute infringed the Fifth Amendment's privilege against self-incrimination. The Florida rule required the defendant to disclose to the prosecution the witnesses he proposed to use to establish his alibi defense. The Court reasoned that the information a defendant relying on a defense of alibi would ultimately have to reveal to carry the defense could not be viewed as "compelled" within the meaning of the Fifth Amendment (as applied to the states through the Fourteenth):

> The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. . . . That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. The pressures generated by the State's evidence may be severe, but they do not vitiate the defendant's choice to present an alibi defense and witnesses to prove it, even though the attempted defense ends in [a] catastrophe for the defendant. *However 'testimonial' or 'incriminating' the alibi defense proves to be, it cannot be considered 'compelled'* within the meaning of the Fifth and Fourteenth Amendments.

*Id.* at 83–84 (emphasis added). The Court attached no significance to the fact that the Florida notice-of-alibi rule required the defendant to disclose in advance of trial the witnesses he intended to use to establish the alibi defense:

> At most, the rule only compelled petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the petitioner from the beginning planned to divulge at trial. Nothing in the Fifth Amendment privilege entitles a defendant

as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense. . . . We decline to hold that the privilege against compulsory self-incrimination guarantees the defendant the right to surprise the State with an alibi defense.

*Id.* at 85–86. The *Williams* Court's conclusion that there is no constitutional significance to requiring that a defendant disclose, prior to trial, the information on which he will rely in his alibi defense suggests that the information the defendant must provide in connection with his alibi notice is not "compelled." By analogy, it could be argued that the testimony elicited at a court-ordered mental examination is not "compelled," because that examination simply provides information that the prosecution must necessarily acquire to have an opportunity to rebut a defense on which the defendant intends to rely.[5]

The analogy to notice-of-alibi cases is not perfect, however. What the defendant is required to provide to the prosecution in connection with his notice of alibi is the information that he will ultimately present at trial, if in fact he chooses to go through with an alibi defense. What the defendant provides during a court-ordered mental health examination may go beyond what he will ultimately present at trial, if in fact he chooses to go through with a mental status defense. Put another way, in a notice-of-alibi case, the information that the government acquires is consistent with the scope of the waiver of the defendant's self-incrimination privilege that will occur at trial if the defendant pursues an alibi theory. In a case involving notice of a mental status defense, even if the defendant introduces mental health evidence at trial and thereby waives his privilege against self-incrimination as to that evidence, the government may have acquired, through the examination, information that goes beyond the scope of the waiver. Moreover, it is unclear whether a court might distinguish the notice-of-alibi context on the ground that the government cannot be prejudiced at the guilt phase of a capital

---

[5] The Supreme Court's conclusion that the rule requiring a defendant to disclose alibi information does not "compel" the defendant to be a witness against himself within the meaning of the Fifth and Fourteenth Amendments, and the arguably analogous application in the context of psychiatric examinations under Rule 12.2, is not inconsistent with the ruling in *Estelle v Smith*, 451 U.S 454 (1981) In the latter case, the defendant was required to submit to a psychiatric exam without having been warned of his *Miranda* rights and without having placed his mental state, in issue The Court held that the introduction at the penalty phase of the defendant's statements during the examination violated the Fifth and Fourteenth Amendments In so ruling, the Court stated that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id* at 468 This holding is consistent with the decision in *Williams* because in the context of the alibi rule—and, arguably, in the context of a mental examination under Rule 12 2—the defendant is deemed to make a voluntary disclosure in order to preserve his right to put forward certain evidence in his defense In *Estelle v Smith*, by contrast, the defendant did nothing to prompt the mental examination Indeed, the Supreme Court emphasized that the constitutional violation arose because the trial court had ordered the examination *sua sponte*, and it quoted with apparent approval the Fifth Circuit's acknowledgment of "the possibility that a defendant who wishes to use psychiatric evidence in his own behalf . can be precluded from using it unless he is [also] willing to be examined by a psychiatrist nominated by the state " 451 U S at 466 n 10 (quoting *Smith v Estelle*, 602 F 2d 694, 705 (5th Cir 1979)) (alteration in original)

case by the denial of access to information about the defendant's mental condition that would not be introduced, if at all, until the sentencing phase. Finally, we note that the Fifth Circuit's observation in *Hall* that the defendant "did not waive his Fifth Amendment privilege against self-incrimination merely by giving notice of his intention to submit expert psychiatric testimony at the sentencing hearing," 152 F.3d at 398, itself may be in tension with a conclusion that the analogy to the notice-of-alibi context is appropriate.

Even if the prosecution in a case involving a mental status defense acquires information going beyond the scope of the evidence that the defendant ultimately introduces, it is not clear that the government should, without a defendant providing specific evidence of taint, bear the burden of demonstrating an independent source for the evidence it seeks to present. In a *Kastigar*-type case, the prosecution, not the defendant, has set in motion the chain of events leading to the compelled testimony. The prosecution seeks an order granting immunity and compelling testimony over a claim of privilege, and the prosecution therefore bears the burden in a later criminal case of demonstrating that it has not improperly used the testimony. When a defendant seeks to introduce mental status evidence, the defendant, not the prosecution, has set in motion the chain of events leading to the court-ordered examination.[6] Even accepting the theory that testimony provided at a court-ordered examination is properly viewed as "compelled," to require the prosecution to establish an independent source for its evidence once a court-compelled examination occurs could lead to an odd result: A defendant could use a notice of an intent to introduce mental status evidence, coupled with a subsequent mental health examination, as a strategic device to put the prosecution to the burden of proving an independent source for its evidence, even though the defendant ultimately chooses not to introduce any mental status evidence at trial.

As this discussion suggests, it is difficult to predict with certainty (1) whether courts would treat statements made during a court-ordered mental examination related to sentencing as "compelled" statements; and (2) whether courts would impose upon the prosecution in a capital case a burden to demonstrate that it made no use of such statements during the guilt phase, without first requiring the defendant to come forward with specific evidence of taint. Safeguards such as those contained in proposed Rule 12.2 would, of course, aid the government

---

[6] The proposition that the defendant sets the process in motion is somewhat less obvious in a capital case where the defendant seeks to preserve the right to introduce psychiatric evidence only in mitigation of sentence in the event he is found guilty, a circumstance not addressed under the current rule However, even in such circumstances, the psychiatric examination would be set in motion by virtue of the defendant's strategic choice rather than the prosecution's demand for affirmative evidence supporting a finding of guilt or of an aggravating sentencing factor Further, as with the current version of Rule 12 2 as well as the alibi notice rule, the strategic choice the defendant must make is predicated on an assumption that the government's proof will suffice to support a finding of guilt. Therefore, we believe that there is no greater reason to impose the burden of proof on the government in a case where the defendant seeks to preserve his ability to introduce evidence of his mental condition only at the penalty hearing than there is in other cases where current law allows for a court-ordered psychiatric examination prior to trial

in meeting a burden, similar to that imposed in *Kastigar*, to show that its case against the defendant is based on evidence obtained from independent sources.

We note, however, that a requirement that the prosecution establish in a capital case that it made no use of statements obtained through a court-ordered examination would be based on a theory that would apply equally in noncapital cases—that the defendant is at risk by virtue of the prosecution's access, prior to the defendant's presentation of mental status evidence, to the results of the examination of the defendant. For example, if a court orders a pretrial mental health examination based on a defendant's notice of intent to raise an insanity defense or a mental condition bearing on guilt, and the prosecution obtains the results of that examination, the prosecution may be exposed to the defendant's statements before the defendant presents his case and actually introduces testimony on mental condition. Cases discussing the Fifth Amendment implications of a court-ordered examination of defendants who intend to raise the insanity defense or to introduce testimony on a mental condition bearing upon guilt do not appear to suggest that the prosecution must, by virtue of its exposure to the defendant's statements, bear the burden of demonstrating an independent source for the evidence it intends to introduce against the defendant. *See, e.g., United States v. Byers*, 740 F.2d 1104, 1114–15 (D.C. Cir. 1984) (en banc) (plurality opinion of Scalia, J.) (rejecting dissenting judges' view that protection of self-incrimination privilege requires "intermediate safeguards" to "protect the values underlying the privilege" *id.* at 1155 (Bazelon, J., dissenting); concluding that "such fiats would be appended to, rather than contained within, the self-incrimination clause of the Fifth Amendment," *id.* at 1115); *see also Kelly v. Withrow*, 25 F.3d 363, 369 (6th Cir.) (holding that requirement that defendant submit to pretrial mental examination, following notice of intent to raise insanity defense, did not infringe defendant's privilege against self-incrimination; "[A] defendant's right not to incriminate himself is not violated per se by requiring him, in an appropriate case, to submit to a mental examination." (internal quotation marks omitted; alteration in original)), *cert. denied*, 513 U.S. 1061 (1994); *Giarratano v. Procunier*, 891 F.2d 483, 488 (4th Cir. 1989) (concluding that, since defendant had announced intention to introduce psychiatric evidence in mitigation at the sentencing phase of capital trial, prosecution could introduce psychiatric evidence even before defendant's expert testified), *cert. denied*, 498 U.S. 881 (1990); *Vardas v. Estelle*, 715 F.2d 206, 210 (5th Cir. 1983) (holding that introduction of evidence from pretrial mental examination did not infringe privilege against self-incrimination, where testimony of state psychiatrist was "offered solely in rebuttal to a defense of insanity, and . . . properly limited to that issue"), *cert. denied*, 465 U.S. 1104 (1984); *United States v. Madrid*, 673 F.2d 1114, 1121 (10th Cir.) (holding that admission of statements obtained during pretrial mental examination did not infringe defendant's privilege against self-incrimination where the defendant gave notice of his intent to raise the insanity defense before the examination occurred

and subsequently presented "substantial" psychiatric evidence), *cert. denied*, 459 U.S. 843 (1982). If a *Kastigar* burden applies to court-compelled mental examinations in capital cases, we believe that it would apply in other cases as well, but we have identified no noncapital cases concluding that it is appropriate to impose such a burden.

## Conclusion

In sum, we do not believe that the Fifth Amendment's privilege against self-incrimination requires safeguards designed to prevent the prosecution from being exposed, during the guilt phase of a capital trial, to the results of a mental health examination ordered following a defendant's notice of intent to introduce evidence on a mental condition bearing upon sentencing. Even if statements made during such an examination are properly viewed as "compelled" statements, the Fifth Amendment's privilege against self-incrimination only precludes the prosecution from improperly using such statements, or the fruits of such statements, at trial. The prosecution's mere possession of or access to the results of the mental health examination would not implicate the Fifth Amendment's privilege against self-incrimination. It is unclear whether, in the absence of safeguards designed to withhold the results of a mental examination from the prosecution, a court would impose a burden on the prosecution to establish an independent source for its evidence without first requiring the defendant to demonstrate specific evidence of taint. Courts do not appear to impose such a burden outside of the capital context, even though the danger that the prosecution would directly or indirectly use statements provided during a mental health examination exists there as well. Nevertheless, if a court required the prosecution to establish that, at the guilt phase of a capital trial, it made no direct or indirect use of statements obtained through a sentencing-related mental examination of the defendant, the safeguards of proposed Rule 12.2(c) would facilitate the government's showing.

RANDOLPH D. MOSS
*Acting Assistant Attorney General*
*Office of Legal Counsel*