UNITED STATES of America, Appellee,

v.

Jesus Amaya QUINTEROS, Appellant.

No. 84–5219.

United States Court of Appeals,
Fourth Circuit.

Argued April 5, 1985.

Decided Aug. 7, 1985.

Gracelia R. Helring, Arlington, Va. (Gracelia R. Helring, P.C., Arlington, Va., on brief), for appellant.

Theodore R. Carron, Sp. Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Janet K. DeCosta, Sp. Asst. U.S. Atty., on brief), for appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Jesus Amaya Quinteros appeals his conviction for the knowing transfer of false identification documents (Social Security cards) in violation of 18 U.S.C. § 1028(a)(2) (1982) and possession of false U.S. identification documents (Alien Registration Receipt cards) in violation of 18 U.S.C. § 1028(a)(6) (1982). Quinteros first contends that Social Security cards are not identification documents within the meaning of 18 U.S.C. § 1028(a)(2), (d)(1) (1982). Secondly, he contends that he was denied a speedy trial in violation of the Speedy Trial Act[1] and the sixth amendment to the United States Constitution. We affirm.

### I.

In January 1984 the Immigration and Naturalization Service (INS) conducted an undercover investigation of the production and sale of Social Security cards and Alien Registration Receipt cards in the Washington, D.C., area. About that time, Quinteros sold counterfeit Social Security cards to an undercover INS officer on two separate occasions. On April 4, 1984, Quinteros was arrested and incarcerated at the D.C. Detention Facility on a warrant charging him with the knowing transfer of false Social Security cards in violation of 18 U.S.C. § 1028(a)(2) (1982).

On May 3, 1984, a U.S. magistrate granted the Government's *ex parte* motion to dismiss the complaint against Quinteros. The U.S. Marshal then released Quinteros from custody. INS officers, however, immediately exercised an unrelated detainer

which they had previously filed on the basis that Quinteros was an illegal alien. Quinteros thus remained incarcerated at the D.C. Detention Facility.

On May 7, 1984, a federal grand jury returned a four-count indictment charging Quinteros with violations of 18 U.S.C. § 1028(a)(2), (a)(6) (1982). Counts I and II charged Quinteros with the knowing transfer of false Social Security cards, the same offense for which he was originally arrested. Count III charged Quinteros with a new offense—the possession of two false Alien Registration Receipt cards, and Count IV charged him with the knowing attempt to transfer the Alien cards. Quinteros moved twice to dismiss the indictment, first contending that Social Security cards are not identification cards within the meaning of 18 U.S.C. § 1028(a)(2), (d)(1) (1982), and later, that his statutory right to a speedy trial had been violated. The district court denied both motions. On June 18, 1984, Quinteros was convicted after a bench trial on Counts I, II, and III.

### II.

Quinteros' conviction under counts I and II involved the knowing transfer of false Social Security cards in violation of section 1028(a)(2), which declares it unlawful for an individual to "knowingly transfer[ ] an identification document or a false identification document knowing that such document was stolen or produced without lawful authority." 18 U.S.C. § 1028(a)(2) (1982). Quinteros contends that Social Security cards are not identification documents as defined in section 1028(d)(1), which provides in pertinent part:

[T]he term "identification document" means a document made or issued by or under the authority of the United States Government ... which, when completed with information concerning a particular individual, is of a type intended or com-

---

1. 18 U.S.C. §§ 3161–3174 (1982).

monly accepted for the purpose of identification of individuals....

18 U.S.C. § 1028(d)(1) (1982). It is true, of course, that providing identification to the holder is not one of the primary purposes of Social Security cards. In fact, the Operation Procedure Manual of the Social Security Administration states that the Social Security card is not to be used for the purpose of identification. Nevertheless, the Social Security card is commonly accepted as an identification card. An expert for the Social Security Administration testified that the Administration frequently issues Social Security cards to elderly people for the purpose of providing identification for cashing checks. She further testified that the legend "Not for Identification Purposes" was dropped from the card in 1972 because individuals nevertheless were using the cards for identification purposes. We think this reflects the common understanding that Social Security cards are identification documents. The fact that an illegal market valued false Social Security cards for identification purposes further supports our conclusion that such cards are commonly accepted for identification within the meaning of section 1028(d)(1).

▪ Moreover, the legislative history of the False Identification Crime Control Act of 1982, of which section 1028 is a part, leads us to conclude that Congress intended Social Security cards to be within the section 1028(d)(1) definition of an identification document. Specifically addressing section 1028(d)(1), the House Judiciary Committee reported:

> The Committee intends that a "type" of identification document "commonly accepted for the purpose of identification of individuals" not be restricted to identification documents, such as driver's licenses, which are widely accepted for a variety of identification purposes. The Committee intends that "identification document" also include those which are "commonly accepted" in certain circles for identification purposes, such as identification cards issued by state universi-

ties and Federal government identification cards.... Finally, an identification card normally will include such identifying elements as an individual's name, address, date or place of birth, physical characteristics, photograph, fingerprints, employer, *or any unique number assigned to an individual by any Federal or State government entity.*

H.R.Rep. No. 802, 97th Cong., 2d. Sess. 9, *reprinted in* 1982 U.S.Code Cong. & Ad. News 3519, 3527 (emphasis added). It is true that the Committee report did not specifically list Social Security cards, but it is also true that the report did not list any specific document as the object of the Act's intended protection, including instead a general description embracing a generic group of government documents commonly accepted for identification purposes. A fair reading of this legislative history reveals a congressional intent to include Social Security documents in that group. Finally, in this connection, we find no merit in Quinteros' contention that section 1028(d)(1)'s definition of identification document is constitutionally over-broad or vague.

### III.

Quinteros next contends that he was denied his right to a speedy trial. He claims that the thirty-three day delay between April 4, when he was arrested and charged, and May 7, when he was finally indicted, violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161(b) (1982), and under the sixth amendment to the Constitution. As Quinteros' arrest involved only the Social Security cards, and not the Alien Registration Receipt cards, we consider the timeliness of his indictment only as it relates to the Social Security cards. We reject Quinteros' contention, concluding that the indictment was timely under the circumstances of this case. Our conclusion is based on the language of the Speedy Trial Act, its legislative history, and the *Speedy Trial Act Guidelines,* [2] which together in-

---

**2.** Committee on the Administration of the Criminal Law of the Judicial Conference of the Unit-

dicate that after a Government-initiated dismissal of a complaint within thirty days of arrest, a subsequent indictment for the same offense filed within the time frame involved here does not violate a defendant's speedy trial rights.

■ It is true that section 3161(b) provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b) (1982). It is also true that after the Government-initiated dismissal of the original complaint, Quinteros was indicted for the same offense thirty-three days after arrest. Quinteros' contention that the indictment violated the thirty-day provision of section 3161(b), however, overlooks the language of another provision of the Act, namely section 3161(d)(1). This provision outlines the consequences of filing a subsequent complaint or indictment after the timely dismissal of the original charge. Section 3161(d)(1) provides in pertinent part:

> If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint ... is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant ... or an information or indictment is filed charging such defend-

ant with the same offense ... the provisions of subsections [3161(b) and 3161(c)] shall be applicable to such subsequent complaint, indictment, or information, as the case may be.

18 U.S.C. § 3161(d)(1) (1982).

In focusing on the effects of a dismissed complaint, Congress directed that after dismissal, the thirty-day provision of section 3161(b) "shall be applicable." [3] Although the bare language of section 3161(d)(1) does not specify whether the thirty-day requirement of section 3161(b) is to run from the original arrest or is to run anew from the date of the second complaint, we conclude that it runs anew from the date of the second complaint. Our study of the legislative history of section 3161(d)(1) and the *Speedy Trial Act Guidelines* compels this result.

The Senate Judiciary Committee's 1974 section-by-section analysis published shortly before the Act's passage leads us initially to that conclusion.

> *Subsection 3161(d)* allows the time limits imposed by subsections 3161(b) and (c) to begin to run afresh should an indictment or information be dismissed upon defendant's motion on grounds other than non-conformance with speedy trial limits, and a subsequent complaint charging the defendant with the same offense or with an offense based on the same criminal conduct or episode is filed.

---

ed States, *Guidelines to the Administration of the Speedy Trial Act of 1974, As Amended* (Dec. 1979 revision with amendments through 1984). At the request of the Judicial Conference, the Committee on the Administration of the Criminal Law reviewed and approved in 1975 the Speedy Trial Act Guidelines prepared jointly by the Administrative Office of the United States Courts and the Federal Judicial Center. *Reports of the Proceedings of the Judicial Conference of the United States held at Washington, D.C., March 6–7, 1975, and September 25–26, 1975,* at 57–58 (1975).

In the preface to the *Guidelines* the Committee stated that "[t]hese guidelines are not intended as binding interpretations of the Act, but rather as the consensus of the Committee which may help each court in formulating its own administrative program." Nevertheless, the *Guidelines* "represent the considered and experi-

enced judgment of various members of the judicial branch and as such deserve consideration in construing the Act." *United States v. Garrett,* 720 F.2d 705, 709 n. 2 (D.C.Cir.1983). Accordingly, federal circuit courts have relied on the *Guidelines* as persuasive interpretations of the Act. *See, e.g., United States v. Carey,* 746 F.2d 228, 229 n. 1 (4th Cir.1984); *United States v. Stockwell,* 743 F.2d 123, 128 n. 8 (2d Cir.1984); *United States v. Mastrangelo,* 733 F.2d 793 (11th Cir.1984); *United States v. Garrett,* 720 F.2d 705, 709 n. 2 (D.C.Cir.1983); *United States v. Dunn,* 706 F.2d 153, 155 (5th Cir.1983); *United States v. Mehrmanesh,* 689 F.2d 822, 829 n. 7 (9th Cir.1982).

**3.** The reference to section 3161(c) is the seventy-day limitation between indictment and trial, which does not concern us here.

This subsection allows latitude to the prosecutor to re-institute prosecution of a criminal defendant whose case has previously been dismissed on non-speedy trial grounds without having to comply with the time limits imposed by the filing of the earlier complaint. To require a prosecutor to conform to indictment and trial time limits which were set by the filing of the original complaint in order to reopen a case on the basis of new evidence would be an insurmountable burden. Thus, when subsequent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint.

S.Rep. No. 1021, 93rd Cong., 2d Sess. 33 (emphasis in original). The *Speedy Trial Act Guidelines* also support this interpretation which allows a new thirty-day period after the second complaint or rearrest. Concerning section 3161(d)(1), the *Guidelines* state:

Paragraph (1) applies to cases in which an indictment or information is dismissed upon the defendant's motion or in which a complaint is dismissed upon the motion of either the defendant or the prosecution. If the defendant is again charged—even if the new charge is for the identical offense—paragraph (1) applies to the new complaint, indictment, or information the same rules that are applicable to an original charge pursuant to Sections 3161(b) and (c). Thus, an arrest or service of summons on a new complaint would, under (b), commence a thirty-day time limit running within which an indictment or information must be filed. On such filing, a new seventy-day time limit for commencement of trial under (c) would again be triggered, as would a new thirty-day minimum period.

*Speedy Trial Act Guidelines, supra,* at 17.

Quinteros argues, however, that the principal purpose of the Act will be frustrated if prosecutors are allowed to gain additional thirty-day periods to obtain indictments

by the simple expedient of dismissing the original complaint. We see nothing in the congressionally expressed purpose of the Act or relevant Supreme Court cases that should inhibit a prosecutor from dismissing a complaint in good faith and later reinstituting proceedings.[4] The House Judiciary Committee indicated that the basic purpose of the Act is to protect defendants from those same concerns that grounded the Supreme Court decisions prohibiting undue prosecutorial delays under the sixth amendment. The Committee reported:

The Supreme Court in [*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ] outlined a number of factors which work against an individual who is forced to await trial for long periods of time. If he is detained, the time spent in jail disrupts family life and enforces idleness; jail offers little or no recreational or rehabilitative programs; "dead time" hinders the defendant's ability to gather evidence, contact witnesses, and otherwise prepare his case. For defendants on pretrial release, the denial of a speedy trial may result in loss of employment or make it impossible to find work; restraints are placed on the accused's liberty, and he may be forced to live under a cloud of anxiety, suspicion, and hostility. The defendant's resources may be drained and his associations curtailed; and he may be subjected to public obloquy, which creates anxiety in his family, friends and the defendant himself.

H.R.Rep. No. 1508, 93rd Cong., 2d Sess. 15, *reprinted in* 1974 U.S.Code Cong. & Ad. News 7401, 7408. As the Supreme Court indicated in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), however, after dismissal of formal charges, the bulk of these concerns are lifted and while a target of a possible prosecution undoubtedly continues to suffer anxiety, it is the kind of strain suffered by any citizen who is "openly subject to a

---

**4.** It is not necessary to consider the question of prosecutorial bad faith for, as discussed below,

none appears here.

criminal investigation." *Id.* at 9, 102 S.Ct. at 1502. Therefore, "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

It is apparent from the legislative history that Congress was aware of these underlying sixth amendment principles when it enacted the Speedy Trial Act, and these principles bear directly on the interpretation to be given to the statutory restraints against undue delay in commencing prosecution of criminal complaints. Certainly in the absence of bad faith, we see no reason why a previously charged defendant, by reason of a timely Government dismissal, should have any more protection from future prosecution than any other person subject to investigation. Like them, he has the protection of applicable statutes of limitations or the due process clause of the fifth amendment under the principles enunciated in *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). *See also United States v. MacDonald,* 456 U.S. at 7, 102 S.Ct. at 1501 (delay after charges are dismissed is to be scrutinized under the due process clause, not the speedy trial clause). In short, we interpret section 3161(d)(1) to allow a fresh thirty-day period between the second complaint and subsequent indictment when a previous complaint has been dismissed within thirty days of the original arrest.

■ To decide this case, however, we must overcome one additional complicating factor, albeit easy of disposition. Section 3161(d) indicates a subsequent *complaint*

starts section 3161(b)'s thirty-day period to run anew. After the dismissal of the original complaint here, however, the Government neither filed a new complaint against Quinteros nor rearrested him. It instead proceeded directly to the grand jury which returned the indictment. Nevertheless, we agree with the First Circuit that these circumstances likewise are controlled by section 3161(d)(1). "The result should logically be no different where a dismissed complaint is followed by an indictment, rather than by a new complaint." *United States v. Krynicki,* 689 F.2d 289, 294 (1st Cir. 1982) (citing *United States v. Belleville,* 505 F.Supp. 1083, 1085 (E.D.Mich.1981)); *cf. United States v. Samples,* 713 F.2d 298, 303 (7th Cir.1983) (second indictment timely under section 3161(d) where there was no second arrest).

In sum, once the April 4 charges against Quinteros were dismissed, section 3161(d)(1)'s thirty-day clock returned to zero. If Quinteros later had been rearrested, the Government would have had another thirty days from the time of the second arrest to secure an indictment. Here, there was no second arrest because Quinteros already was in custody under valid pre-deportation procedures. Grand jury consideration and indictment without an intermediate arrest or summons, however, imposed no greater burden on Quinteros than would have been imposed by a second arrest or summons and subsequent indictment. In fact, the procedural course followed in this case actually shortened the pre-indictment proceedings, thereby advancing the purposes of the Speedy Trial Act. The May 7 indictment, therefore, was timely.[5]

---

**5.** In effect, we conclude that under section 3161(d)(1) Congress intended to exclude from the effect of the section 3161(b) thirty-day limitation any period of delay during which charges are not pending. *See also, United States v. Hillegas,* 578 F.2d 453, 456 n. 3 (2d Cir.1978). Lending support to that conclusion is section 3161(h)(6), another provision of the Speedy Trial Act, which provides that the dismissal of an indictment upon the Government's motion tolls the operation of the section 3161(b) thirty-day period until a subsequent arrest or service of

summons. Specifically, section 3161(h)(6) states in pertinent part:

> If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense ... [then the computation excludes] any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

Quinteros contends, however, that dismissal of the complaint and execution of a detainer by INS officers one day before expiration of section 3161(b)'s thirty-day period, followed four days later by indictment and return to the custody of the U.S. Marshal "constitute paper shuffling and a ruse by the prosecution to evade the Speedy Trial Act guarantee of indictment within thirty days of an arrest." The facts indicate otherwise. The INS obtained custody of Quinteros upon a detainer filed at least one week prior to the dismissal of the complaint and for a separate offense, illegal entry. Absent other evidence, this would imply, contrary to Quinteros' argument, that the INS did not execute its detainer against him merely for the purpose of holding him until the prosecution could file an indictment.

Quinteros also contends that the Government attorney acted in bad faith when he moved for a dismissal of the complaint on the twenty-ninth day after arrest in order to evade section 3161(b)'s thirty-day time limit. He suggests that the Government should have sought a continuance pursuant to 18 U.S.C. § 3161(h)(8) (1982), which allows the tolling of section 3161(b)'s thirty-day clock where the "ends of justice" served by such tolling "outweigh the best interests of the public and the defendant in a speedy trial." Suffice it to say that, although a motion for continuance might be preferable in some circumstances, the choice of one statutorily permissible procedure over another does not here indicate bad faith. We discern no violation of the Speedy Trial Act in the circumstances of this case because the Government dismissed the complaint prior to the expiration of section 3161(b)'s thirty-day period. *See United States v. Bright,* 563 F.Supp. 354 (D.D.C.1982) (citing *United States v. Fisher,* Crim. No. 82–237 (D.D.C. Oct. 8, 1982)).

▉ Turning next to Quinteros' constitutional claims, he first contends that the delay between the time of his arrest and his indictment violates his right to a speedy trial under the sixth amendment. There is simply no merit to this contention under the balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In this case, a delay of thirty-three days between arrest and indictment is not presumptively prejudicial, and Quinteros suggests no prejudice as a result of the delay. Likewise, there is no merit to Quinteros' contention that he was denied due process under the fifth amendment when the magistrate dismissed the complaint without notice or a hearing. He claims that he had no opportunity to assert his speedy trial rights or to argue for dismissal with prejudice. To the contrary, Quinteros had sufficient opportunity to assert his speedy trial rights. He could have filed a speedy trial motion on any day during his incarceration, but he failed to do so. Although such failure does not constitute a waiver of such a fundamental constitutional right, it is an indication that Quinteros was not greatly concerned about obtaining a speedy trial during the period he was incarcerated. *Barker v. Wingo,* 407 U.S. at 528–30, 92 S.Ct. at 2191–92. He, of course, has asserted his speedy trial rights since his indictment. Finally, Quinteros presents, and the record reveals, no factors supporting a dismissal with prejudice. His reliance on 18 U.S.C. § 3162(a)(1) (1982), requiring a magistrate to consider three factors when determining whether to dismiss a complaint with or without prejudice, is misplaced. Section 3162(a)(1) applies only to situations in which an indictment has been filed outside the thirty-day time limit. At the time the magistrate dismissed the complaint, no indictment had been filed.

For all of the above reasons, we conclude that there has been no violation of Quinteros' statutory or constitutional rights to a speedy trial or his right to due process.

---

18 U.S.C. § 3161(h)(6) (1982). We agree with the Second Circuit in *Hillegas, supra,* that although section 3161(h)(6), strictly read, provides tolling of the section 3161(b) thirty-day period only upon dismissal of an indictment, it would be anomalous to find that such tolling is not also triggered upon the dismissal of a complaint. *Id.* 459–60; *see also Krynicki,* 689 F.2d at 294; *United States v. Borum,* 544 F.Supp. 170, 172 (D.D.C.1982).

The judgment of the district court is AFFIRMED.