# UNITED STATES of America,

## v.

**TYSON FOODS, INC., Robert Hash, Gerald Lankford, Keith Snyder, Truley Ponder, Spencer Mabe, and Jimmy Rowland.**

No. 4:01–cr–061.

United States District Court, E.D. Tennessee, at Winchester.

Jan. 14, 2003.

Roger W. Dickson, Travis McDonough, Miller & Martin, Chattanooga, TN, Mark D. Hopson, Thomas C. Green, Frank R. Volpe, Sidley, Austin, Brown & Wood, LLP, Washington, DC, for Tyson Food, Inc.

P. K. Holmes, III, Warner, Smith & Harris, PC, Fort Smith, AZ, for Robert Hash.

Robert M. Adler, Paul L. Knight, O'Connor & Hannan, LLP, Washington, DC, for Gerald Lankford.

Kenneth R. Shemin, Shemin & Hendren, PLLC, Fayetteville, AR, for Keith Snyder.

Aubrey B. Harwell, Jr., Neal & Harwell, Nashville, TN, for Truley Ponder.

W. Thomas Dillard, Ritchie, Fels & Dillard, PC, Knoxville, TN, for Spencer Mabe.

Douglas A. Trant, Trant and Woods, Knoxville, TN, for Jimmy Rowland.

John P. MacCoon, Tammy O. Combs, U.S. Dept. of Justice, Office of U.S. Attorney, Chattanooga, TN, Matthew T. Morris, U.S. Dept. of Justice, Office of U.S. Attorney, Knoxville, TN, Stephanie D. Thacker, U.S. Dept. of Justice, Criminal Division/Child Exploitation, Washington, DC, for United States.

## MEMORANDUM AND ORDER

EDGAR, Chief Judge.

The following motions are before the Court.

**(1) Defendants' Motion To Dismiss Counts Charging Document Offenses (Counts 13, 21–36) [Court File No. 63]**

Defendants move to dismiss Counts 13 and 21–36 which charge document offenses pursuant to 18 U.S.C. § 1546(a) and (b). [Court File No. 63]. After reviewing the indictment and § 1546, the Court concludes that the motion is **GRANTED IN PART AND DENIED IN PART.** To the extent the defendants move to dismiss Counts 13, 24, 25, 26, 32, 33, 34, 35, and 36, their motion is **GRANTED.** Counts 13, 24, 25, 26, 32, 33, 34, 35 and 36 are hereby **DISMISSED** as to all defendants. To the extent the defendants move to dismiss Counts 21, 22, 23, 27, 28, 29, 30 and 31, their motion is **DENIED.**

**(a) 18 U.S.C. § 1546(b): Identification Documents**

Counts 13, 24—26, and 32—36 charge the defendants with violating 18 U.S.C. § 1546(b) by using or causing the use of illegal identification documents for the purpose of satisfying a requirement of section 274(b) of the Immigration and Nation-

ality Act ("INA"). The alleged illegal identification documents are Social Security account number cards ("Social Security card"). Defendants contend that Counts 13, 24—26 and 32—36 are defective and should be dismissed because a Social Security card is not an "identification document" within the meaning of 18 U.S.C. § 1546(b). Defendants ask the Court to invoke the rule of lenity.

This part of the defendants' motion is well taken and will be **GRANTED** based on the rule of lenity. The government raises various arguments in an effort to show that a Social Security card is an "identification document" within the meaning of 18 U.S.C. § 1546(b) but these arguments are not persuasive. The term "identification document" in § 1546(b) is not defined by the statute. The language in § 1546(b) and the structure of 18 U.S.C. § 1546 as a whole are ambiguous about whether Congress intended for "identification document" to mean a Social Security card. The legislative history of § 1546(b) is inconclusive and provides little or no meaningful guidance. Section 1546(b) is reasonably susceptible of two diametrically opposed interpretations with regard to whether a Social Security card is an "identification document." Accordingly, the Court invokes the rule of lenity and construes § 1546(b) in favor of the defendants.

This is a matter of first impression. There are no reported cases addressing this precise question of law. The starting point for interpretation of a statute is the plain meaning of the statute's language. If the plain meaning is clear, then the inquiry ceases and Court need go no further. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). In endeavoring to interpret the plain meaning of statutory language, the Court looks to the structure and de-

sign of the statute as a whole. *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir.2001); *United States v. Choice*, 201 F.3d 837, 840 (6th Cir.2000); *United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992). If the statutory language is unclear, we look to legislative history to ascertain Congressional intent. Finally, if the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of the defendants. *United States v. Granderson*, 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994); *Boucha*, 236 F.3d at 774; *Choice*, 201 F.3d at 840.

■ The rule of lenity is a last resort. It is reserved for those cases where, after seizing upon everything from which aid can be derived in interpreting a statute, the courts are still left with an ambiguous criminal statute. *Smith v. United States*, 508 U.S. 223, 239–40, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *United States v. Hill*, 55 F.3d 1197, 1206 (6th Cir.1995). The rule of lenity "cannot dictate an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term." *Smith*, 508 U.S. at 240, 113 S.Ct. 2050 (quoting *Taylor v. United States*, 495 U.S. 575, 596, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)).

18 U.S.C. § 1546(b) provides:

Whoever uses—

(1) an identification document, knowing (or having reason to know) that the document was not issued lawfully for the use of the possessor,

(2) an identification document knowing (or having reason to know) that the document is false, or

(3) a false attestation,

for the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act, shall be fined

under this title, imprisoned not more than 5 years, or both.

■ There is no definition in 18 U.S.C. § 1546(b) as to what constitutes an identification document. The term "identification document" is explained in § 274A(b) of INA, codified at 8 U.S.C. § 1324a(b). The provisions of 8 U.S.C. § 1324a(b) are especially significant because they are expressly referenced in 18 U.S.C. § 1546(b). One reasonable interpretation of the plain meaning of 18 U.S.C. § 1546(b) is that the reference therein to 8 U.S.C. § 1324a(b) indicates the source of the term "identification document." This may serve to limit the scope of 18 U.S.C. § 1546(b) and distinguish it from 18 U.S.C. 1546(a), discussed *infra*. It is important to note that 8 U.S.C. § 1324a(b) was enacted in part of the same legislation as 18 U.S.C. § 1546(b). See Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. No. 99–603, § 101(a)(1), 100 Stat. 3359, 3360 (1986) (enacting 8 U.S.C. § 1324a(b)); *Id.* § 103(a)(6) (enacting 18 U.S.C. § 1546(b)). It makes good sense to use the definition of "identification document" provided in 8 U.S.C. § 1324a(b) to give meaning to and explain the use of the identical term "identification document" in 18 U.S.C. § 1546(b). A canon of statutory construction is that identical words used in different parts of the same legislative act are presumed to be intended to have the same meaning. *Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986).

8 U.S.C. § 1324a(b) creates an employment verification system. 8 U.S.C. § 1324a(b)(1) provides in pertinent part:

**(B) Documents establishing both employment authorization and identity**

A document described in this subparagraph is an individual's—

(i) United States passport;

(ii) resident alien card, alien registration card, *or other document designated by the Attorney General*, if the document—

(I) contains a photograph of the individual and such other personal identifying information relating to the individual as the Attorney General finds, by regulation, sufficient for purposes of this subsection,

(II) is evidence of authorization of employment in the United States, and

(III) contains security features to make it resistant to tampering, counterfeiting, and fraudulent use.

(C) **Documents evidencing employment authorization**

A document described in this subparagraph is an individual's—

(i) *social security account number card* (other than such a card which specifies on the face that the issuance of the card does not authorize employment in the United States); or

(ii) other documentation evidencing authorization of employment in the United States which the Attorney General finds, by regulation, to be acceptable for purposes of this section.

(iii) Redesignated (ii)

(D) **Documents establishing identity of individual**

A document described in this subparagraph is an individuals—

(i) driver's license or similar document issued for the purpose of identification by a State, if it contains a photograph of the individual or such other personal identifying information relating to the individual as the Attorney General finds, by regulation, sufficient for purposes of this section; or

(ii) in the case of individuals under 16 years of age or in a State which does not provide for issuance of an identification document (other than a driver's license) referred to in clause (i), documentation of personal identity of such other type as the Attorney General finds, by regulation, provides a reliable means of identification.

(Footnote omitted) (Emphasis supplied).

■ Under 8 U.S.C. § 1324a(b)(1) and the federal regulations promulgated pursuant to this statute (8 C.F.R. § 274a.2), a Social Security card is a document evidencing employment authorization but it is not an identification document. Based on a common sense reading of the plain language in 18 U.S.C. § 1546(b) which expressly references § 274A(b) of the INA (8 U.S.C. § 1324a(b)), it can reasonably be inferred that Congress did not intend for a Social Security account number card to be an "identification document" within the meaning of 18 U.S.C. § 1546(b). On this point, the Court agrees with the defendants.

The government argues that to narrowly interpret 18 U.S.C. § 1546(b) to mean that a Social Security card is not an identification document would be inconsistent with the structure of 18 U.S.C. § 1546. The government relies on § 1546(a) which provides in part:

Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, *or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States*, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, *or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the*

*United States,* knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained;....

(Emphasis supplied).

18 U.S.C. § 1546(a) does not contain or use the term "identification card." The language in § 1546(a) obviously includes Social Security cards because they are required for employment in the United States. The government contends that when Congress enacted 18 U.S.C. § 1546(b), it used the catch-all phrase "identification document" rather than repeat the long, unwieldy list of documents in § 1546(a). The government wants the Court to infer or assume this is what Congress intended but the government's proposed interpretation of the statute is not self-evident from the plain language and structure of § 1546(a) and (b).

Although the government's theory is not entirely implausible and it has some superficial appeal, it is only one possible interpretation of § 18 U.S.C. § 1546(a) and (b). The statute can just as easily be read as providing that Social Security cards are not identification documents under § 1546(b). Section § 1546(b) is manifestly ambiguous since it is capable of two completely different, reasonable interpretations. The legislative history cited by the government is of little aid in construing the statute.

■■■ 18 U.S.C. § 1546(a) and (b) do not use the same language and the difference in language is very significant. It is a basic canon of statutory construction that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct.

296, 78 L.Ed.2d 17 (1983); *see also Duncan v. Walker,* 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001); *Bates v. United States,* 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997); *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). The presumption may lose some of its force when the statute sections in question are dissimilar and scattered at distant points of a lengthy and complex Act. But in this case, given the structure of 18 U.S.C. § 1546(a) and (b) and their immediate proximity to each other, the presumption is strong. *See Granderson,* 511 U.S. at 63, 114 S.Ct. 1259 (Kennedy, J. concurring).

When this canon of statutory construction is applied to 18 U.S.C. § 1546(a) and (b), the use of the particular term "identification document" in § 1546(b) but not in § 1546(a) raises a presumption that Congress intended to make a distinction between the two subsections. Although the list of documents in § 1546(a) is relatively long and verbose, the term "identification document" in § 1546(b) would be a strange, ill-fitting and poorly chosen catch-all phrase or shorthand reference to all documents in § 1546(a) since "identification document," as explained and defined in 8 U.S.C. § 1324a(b), has a different meaning from the documents set forth in 18 U.S.C. § 1546(a). If Congress intended to use a catch-all phrase in § 1546(b) to refer to precisely the same documents in § 1546(a), then Congress could have made its intent far more clear by using language other than the ambiguous term "identification document."

The government argues the same fraudulent documents that § 1546(a) makes it a crime to possess are intended by Congress to also be unlawful under § 1546(b) to use to satisfy any requirement of § 274A(b) of INA. The government says that if the

term "identification document" in § 1546(b) is construed more narrowly than the various documents listed in § 1546(a), it will create an unreasonable and unnecessary loophole that is inconsistent with the intent and purpose of § 1546.

The government's argument is not persuasive. Assuming *arguendo* there exists a "loophole" in 18 U.S.C. § 1546(b), it is because Congress created it. If Congress intended to make the term "identification document" in § 1546(b) coextensive with and applicable to all of the same documents set forth in § 1546(a) and to Social Security cards, Congress should have clearly so provided in the statute's language but it did not. If Congress intended to make the term "identification document" in § 1546(b) applicable to all of the same documents set forth in § 1546(a), then Congress failed.

■ Congress unfortunately has drafted a statute, 18 U.S.C. § 1546(b), that is far from transparent. This Court is not permitted to indulge in some vague intuition of what Congress might have had in mind. *See Granderson,* 511 U.S. at 67, 114 S.Ct. 1259 (Kennedy, J., concurring). Perhaps the interpretation of § 1546(b) urged here by the government may be sensible as a matter of policy, and may even reflect what some members of Congress hoped to accomplish. However, the government's interpretation of § 1546(b) is not in accord with the plain meaning and text of the statute that Congress saw fit to enact. It is beyond the province of this Court change or correct the statute. The Court has no authority to stretch the language of § 1546(b) in order to write a more effective statute than Congress has devised.

■ This Court's task is to apply and enforce the statute as written, not to improve upon it. *Granderson,* 511 U.S. at 68, 114 S.Ct. 1259 (Kennedy, J. concurring); *Pavelic & LeFlore v. Marvel Entertainment Group, Div. of Cadence Indus-*

*tries Corp.,* 493 U.S. 120, 126, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). As the Supreme Court stated in *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), "the fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do." This admonition is particularly important when the Court construes a criminal statute. *Granderson,* 511 U.S. at 69, 114 S.Ct. 1259 (Kennedy, J. concurring); *Bass,* 404 U.S. at 348, 92 S.Ct. 515 (legislatures and not courts should define criminal offenses).

The government contends that because 18 U.S.C. § 1546 does not expressly define the term "identification document," this Court is free to construe the term in accord with the definition and usage of "identification document" set forth in 18 U.S.C. § 1028. Section 1028 deals with fraud and related criminal activity in connection with identification documents and other information. 18 U.S.C. § 1028(d) provides in part:

> (2) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or *commonly accepted for the purpose of identification of individuals;*
>
> (3) the term "false identification document" means a document of a type intended or commonly accepted for the purposes of identification of individuals that—

**(A)** is not issued by or under the authority of a governmental entity; and

**(B)** appears to be issued by or under the authority of the United States Government, a State, a political subdivision of a State, a foreign government, a political subdivision of a foreign government, or an international governmental or quasi-governmental organization;

**(4)** the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

**(A)** name, *social security number,* date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number; . . . .

(Emphasis supplied).

The government argues that the United States criminal code contains a definition of "identification document" in 18 U.S.C. § 1028. It cites *United States v. Quinteros,* 769 F.2d 968 (4th Cir.1985), for the proposition that Social Security cards are "identification documents" under 18 U.S.C. § 1028. *See also United States v. Gros,* 824 F.2d 1487, 1496 (6th Cir.1987); *System Management, Inc. v. Loiselle,* 91 F.Supp.2d 401, 412 (D.Mass.2000) (Social Security cards may be considered identification documents for purposes of 18 U.S.C. § 1028). The government invites this Court to take the definition of "identification document" from 18 U.S.C. § 1028(d) and apply it to the present counts being prosecuted under 18 U.S.C. § 1546(b).

The government's argument fails. There is no legal authority or precedent for the Court to use the definition of "identification document" provided in 18 U.S.C. § 1028(d) and apply it to criminal charges

brought under 18 U.S.C. § 1546(b). There is no reference in 18 U.S.C. § 1546 to 18 U.S.C. § 1028. If Congress had intended for the definition of "identification document" in § 1028 to be applicable to § 1546(b), then Congress could have clearly stated its intent in § 1546(b) but it did not do so. Instead, Congress expressed its intent in 18 U.S.C. § 1546(b) about identification documents by making explicit reference only to 8 U.S.C. § 1324a(b).

The instant case is distinguishable from *Quinteros,* 769 F.2d 968. In *Quinteros,* the Fourth Circuit held that Social Security cards are commonly accepted for identification which comports with the language of 18 U.S.C. § 1028(d). The Fourth Circuit reviewed the legislative history of 18 U.S.C. § 1028 and found a modicum of support for determining that Congress intended for Social Security cards to be considered identification documents under § 1028. *Id.* at 970. In the instant case, the defendants are charged with violating 18 U.S.C. § 1546(b) which is different from the statute at issue in *Quinteros.* There is nothing in 18 U.S.C. § 1546(b) which refers to documents "commonly accepted" for purposes of identification. Instead, § 1546(b) describes the term "identification document" in terms of 8 U.S.C. § 1324a(b). Unlike *Quinteros,* this Court does not find support in the legislative history of 18 U.S.C. § 1546(b) that Congress ever intended for a Social Security card to be "identification document" within the purview of § 1546(b).

■ This Court will not assume or take it for granted that Congress intended for Social Security cards to be "identification documents" under 18 U.S.C. § 1546(b). The Fourth Circuit acknowledges in *Quinteros,* 769 F.2d at 970, that the Social Security Administration states Social Security cards are not to be used for identification. When a word is not defined

in a statute, we construe it in accord with its ordinary or natural meaning. *Smith*, 508 U.S. at 228, 113 S.Ct. 2050; *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). In today's world of commerce, banking, and government services, Social Security account number cards which do not contain a verified signature and photo identification officially approved by the United States government, are not generally considered a form of proper identification. When the Court seeks to accord the term "identification document" in § 1546(b) its ordinary and natural meaning, one reasonable interpretation is that it does not mean Social Security cards.

The government cites *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), wherein the Supreme Court discusses the legislative scheme established by IRCA. The government contends that *Hoffman Plastic Compounds* is consistent with and supports the government's interpretation of 18 U.S.C. § 1546(b) in the instant case. [Court File No. 77]. Defendants object and argue that *Hoffman Plastic Compounds* is inapposite and did not address the question whether a Social Security card is an "identification document" within the meaning of § 1546(b). [Court File No. 91].

After reviewing the passages from *Hoffman Plastic Compounds* cited by the government, this Court agrees with the defendants that the Supreme Court's decision is not helpful in resolving the specific issue here. The limited question presented in *Hoffman Plastic Compounds* was whether IRCA, 8 U.S.C. § 1324a, foreclosed the National Labor Relations Board from awarding backpay to an employee who, although laid off from employment for an illegal reason, was an undocumented alien. In the course of its discussion in *Hoffman Plastic Compounds*, 122 S.Ct. at 1282 n. 3,

152 L.Ed.2d at 281 n. 3, the Supreme Court said that for an alien to be authorized to work in the United States, he or she must possess a valid Social Security account number card pursuant to 8 U.S.C. § 1324a(b)(C)(i). The Supreme Court also generally said that IRCA makes it a crime for unauthorized aliens to subvert the employer verification system by tendering fraudulent documents. Aliens who use or attempt to use fraudulent documents are subject to fines and criminal prosecution under 18 U.S.C. § 1546(b). *Hoffman Plastic Compounds*, 122 S.Ct. at 1283, 152 L.Ed.2d at 282.

The government's reliance on *Hoffman Plastic Compounds* is misplaced. The Supreme Court is *Hoffman Plastic Compounds* did not address and decide the issue whether a Social Security account number card is an "identification document" within the meaning of 18 U.S.C. § 1546(b). The Supreme Court's mere passing reference to Social Security account number cards does nothing to bolster the government's argument in the instant case.

Accordingly, the Court invokes the rule of lenity in the defendants' favor and dismisses the charges brought under 18 U.S.C. § 1546(b), namely Counts 13, 24, 25, 26, 32, 33, 34, 35 and 36. This decision also has an impact on the 18 U.S.C. § 371 conspiracy charged in Count 1. In paragraph 1(d) in Count 1, it is alleged that the defendants conspired to cause the use of, and use, false identification documents, *e.g.*, Social Security cards, in violation of 18 U.S.C. §§ 1546(b) and 2. The government cannot seek to prove the conspiracy in Count 1 by charging in paragraph 1(d) that an object of the conspiracy was to violate 18 U.S.C. § 1546(b) based on the theory that Social Security cards are identification documents under § 1546(b).

### (b)  18 U.S.C. § 1546(a)

Defendants move to dismiss the charges brought under 18 U.S.C. § 1546(a) (Counts 21, 22, 23, 27, 28, 29, 30, 31). They contend these counts are defective on the ground it is not alleged that the defendants either possessed false Social Security cards or committed any affirmative acts to aid and abet possession of false Social Security Cards by other persons. It is argued the indictment alleges it was the government's undercover agents, assisted by cooperating witness Amador Anchondo–Rascon, who are solely responsible for providing false Social Security cards to the illegal aliens. Defendants say that while the indictment alleges they were told about these activities, mere knowledge that crimes are taking place does not constitute a basis for charges of aiding and abetting the possession of false Social Security cards by the illegal aliens.

Defendants assert that at most, the indictment alleges they were told that certain job applicants at Tyson's plants would possess false documents and the defendants permitted those applicants to be hired. Such allegations provide no basis for charges that the defendants caused illegal aliens to possess false documents.

The defendants' motion to dismiss the charges brought under 18 U.S.C. §§ 1546(a) and (2) is **DENIED.** Counts 21—23 and 27—31 are sufficient to charge offenses. For the reasons expressed by the government in its response in opposition [Court File No. 70, pp. 1–3], the defendants' motion fails.

### (2)  Defendants' Motion to Dismiss Counts Charging Defendants with "Bringing" and "Transporting" Illegal Aliens (Courts 3—12 and 14—20) [Court File No. 84]

Defendants move to dismiss Counts 3—12 and 14—20. [Court File No. 84]. Counts 3—7 and 14—15 charge that the defendants, aided and abetted by each other and by other persons, did knowingly bring to and cause to be brought to the United States certain illegal aliens for the purpose of commercial advantage and private financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. 8 U.S.C. § 1324(a)(2) provides in pertinent part:

> Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs—
>
> . . .
>
> **(B)**  in the case of—
>
> . . .
>
> **(ii)** an offense doe for the purpose of commercial advantage or private financial gain, . . .

be fined under Title 18, and shall be imprisoned, in the case of a first or second violation of subparagraph (B)(iii), not more than 10 years, in the case of a first or second violation of subparagraph (B)(i) or (b)(ii), not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

Counts 8—12 and 16—20 charge that the defendants, aided and abetted by each other and by other persons, did knowingly transport, move, and cause to be transported and moved by means of transportation, certain illegal aliens for the purpose of commercial advantage and private financial gain of the defendants in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i) and 18 U.S.C. § 2. 8 U.S.C. § 1324(a) provides in pertinent part:

**(1)(A)** Any person who—

. . .

**(ii)** knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

. . .

**(II)** aids or abets the commission of any of the preceding acts, shall be punished as provided in subparagraph (B).

**(B)** A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—

. . .

**(ii)** in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under Title 18, imprisoned not more than 5 years, or both;

Defendants contend these charges constitute prosecutorial overreaching and should be dismissed for several reasons. First, the defendants assert the indictment contains no allegation that any of the defendants did personally bring or transport illegal aliens. The government's undercover INS agents, assisted by the government's cooperating witness, Amador Anchondo–Rascon, did all of the bringing and transporting of illegal aliens. Defendants say the most the indictment alleges is that the defendants met or spoke with undercover INS agents and during those conversations the defendants agreed to hire illegal aliens brought to them by the undercover agents. Defendants argue the indictment is defective because hiring illegal aliens is not the same as bringing and transporting them. It is argued that the indictment fails to plead violations of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(2)(B)(ii) based solely upon allegations that the defendants agreed to hire illegal aliens in violation of 8 U.S.C. § 1324a.

Furthermore, defendants contend the mere allegation they were on notice that illegal aliens had been brought into or transported within the United States does not make the defendants criminally liable for such conduct. Defendants assert knowledge that an offense is taking place or has already taken place does not give rise to criminal liability as a principal.

Next, defendants argue that to the extent the government seeks to prosecute them on a *Pinkerton*[1] theory of conspirators being liable for reasonably foreseeable offenses committed in furtherance of a conspiracy, the factual allegations in the indictment doe not support a *Pinkerton* theory. Defendants contend the factual allegations make it clear they are accused of agreeing to employ illegal aliens. According to the defendants, the indictment does not allege that they, by word or deed, agreed to bring, transport or smuggle aliens.

Next, the defendants contend that the offense of bring an illegal alien to the United States under 8 U.S.C. § 1324(a)(2)(B)(ii) is complete when the individual alien is delivered to a specific destination within the United States. Defendants cite *United States v. Ramirez–Martinez*, 273 F.3d 903, 912 (9th Cir.2001), and *United States v. Aslam*, 936 F.2d 751, 755 (2d Cir.1991). In the instant case, defendants argue that the § 1324(a)(2)(B) "bringing" violations were concluded when the illegal aliens reached their immediate destination in Texas. Defendants say their conduct—days or weeks later—in

---

**1.** *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)

hiring the illegal aliens falls outside the statute's scope.

In response to all of these arguments, the government asserts that the defendants cannot evade criminal liability for substantive offenses they conspired to cause and make happen. The government's position is that coconspirators under 18 U.S.C. § 371, and causers and aiders and abettors under 18 U.S.C. § 2, are liable for the actions of those persons whom they conspire with, cause, or aid and abet to commit crimes. The indictment alleges the defendants conspired to cause and conspired to aid and abet illegal aliens to be brought into the United States, transported within the United States to Tyson plants, and supplied with false documents so the illegal aliens could be hired by Tyson under a false pretense of legality. The indictment alleges that the defendants negotiated and arranged for these criminal offenses to occur. The smugglers and undercover INS agents are alleged to have complied with the requests of the defendants and their coconspirators. It is the government's theory of the case that the defendants can be prosecuted based on the concept of vicarious liability of coconspirators and the concepts of criminal liability inherent in 18 U.S.C. § 2.

The defendants' motion to dismiss Counts 3—12 and 14—20 is **DENIED.** The indictment is not defective. The government may proceed to trial based on its theory of the case. *See United States v. Superior Growers Supply, Inc.,* 982 F.2d 173 (6th Cir.1992) (conspiracy to aid and abet).

Finally, defendants argue the indictment is flawed because it improperly invokes 18 U.S.C. § 2 to charge aiding and abetting the transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(II) (Counts 8—12, 16—20). 8 U.S.C. § 1324(a)(1)(A) contains its own aiding and abetting provision. 8 U.S.C. § 1324(a)(1)(A)(v)(II) pro-

vides that any person who aids or abets the commission of any of the preceding acts in § 1324(a)(1)(A) shall be punished as provided in § 1324(a)(1)(B). Defendants contend that the aiding and abetting provision in 8 U.S.C. § 1324(a)(1)(A)(v)(II) creates an exception to the general aiding and abetting statute, 18 U.S.C. § 2(a). *See United States v. Nolasco–Rosas,* 286 F.3d 762, 766–67 (5th Cir.2002); *United States v. Angwin,* 271 F.3d 786 (9th Cir.2001). In other words, defendants take the position that the aiding and abetting provision in § 1324(a)(1)(A) preempts the government's use of 18 U.S.C. § 2 with regard to violations of § 1324(a)(1)(A).

In response, the government explains that 8 U.S.C. § 1324(a)(1)(A)(v)(II) merely supercedes the sentencing provisions of 18 U.S.C. § 2. In *Angwin,* 271 F.3d at 801, the Ninth Circuit states: "The aiding and abetting provision in subsection (a)(1) does not impose aiding and abetting liability where such liability would not otherwise exist; *it merely establishes different penalties* for aiders and abetters than would result under Title 18 in the absence of the aiding and abetting provision." (Emphasis supplied).

This Court agrees with the government that the language in 8 U.S.C. § 1324(a)(1)(A) concerning the penalties for aiding and abetting function merely as a sentencing limitation not as a prohibition against charging aiding and abetting under 18 U.S.C. § 2.

To the extent the defendants move to dismiss the aiding and abetting charges in Count 8—12 and 16—20, the motion is **DENIED.** An indictment must inform the defendant of the crime with which he is charged. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Proper notice is given where the defendant is fairly informed of the charge against which he must defend,

and the indictment enables the defendant to plead acquittal or conviction in bar of future criminal prosecutions for the same offense. *United States v. Mohney,* 949 F.2d 899, 903–04 (6th Cir.1991). In this case, the defendants have received fair notice that they are charged with aiding and abetting in Counts 8—12 and 16—20. Although the indictment cites to 18 U.S.C. § 2 rather than 8 U.S.C. § 1324(a)(1)(A)(v)(II), this does not constitute a fatal defect on the aiding and abetting charges.

SO ORDERED.